# LOYOLA FEDERAL SAVINGS AND LOAN ASSOCIATION *v.* BUSCHMAN ET AL.

[No. 92, September Term, 1961.]

*Decided December 18, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

W. Lee Harrison, with whom were James D. C. Downes and Richard C. Murray on the brief, for appellant.

No brief and no appearance for appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County, reversing the action of the County Board of Appeals in granting a variance under the County Zoning Regulations (the Regulations) as to the height of an office building. This variance was granted initially by the Zoning Commissioner, and on appeal was granted by the County Board of Appeals (the Board).[1]

The applicant-appellant, Loyola Federal Savings & Loan Association, desires to construct a 95-foot high office building of six stories, plus a small additional story to house mechanical equipment, in a Business Major (B.M.) zone in which such a building is a permitted use. Loyola proposes to use part of the building itself and to rent out other parts. The proposed site fronts on the north side of Pennsylvania Avenue in Towson and is about midway between the York Road on the east and Washington Avenue on the west. Alleghany Avenue, an east-west street, bounds the block on the

---

1. There was also originally an application for a front setback variance. This was similarly granted, and the action of the Board in granting it was affirmed by the Circuit Court. There is no appeal from that portion of the Circuit Court's order.

north. A 20-foot alley runs parallel to and about midway between Alleghany and Pennsylvania Avenues, and at its east end runs into a north-south alley connecting those two alleys. There is, in addition, an alley running from the north-south alley east to the York Road a little north of the 20-foot alley. Loyola also owns a lot fronting on Alleghany Avenue and extending south to the 20-foot alley. This is just west of the tract fronting on Pennsylvania Avenue, which extends north to the 20-foot alley. Loyola proposes to use its Alleghany Avenue lot as a parking lot in conjunction with the rear of the Pennsylvania Avenue lot. The two together, including an upper deck on the Pennsylvania Avenue lot, furnish sufficient parking space for the proposed office building. They also are in conformity with a "core" parking plan developed by the Planning Commission, which contemplates the use of interior areas in blocks for parking purposes; and there is a possibility of adding a second deck to the rear of the Pennsylvania Avenue lot to further the core parking plan.

The two protestants who appeared before the Board and in the Circuit Court, but have not appeared here, objected to it on the score of height and possibly traffic hazards or congestion. Their traffic contentions were rejected by both the Board and the Court and appear of no moment. The Board found the height variance proper. (Indeed, it thought that to deny the variances requested "would be * * * a backward and not a forward step.") The Court construed the Regulations as not authorizing the height variance and expressed itself as "regretfully * constrained to reverse the Board on the question of height."

Section 234 of the Regulations provides that the B.M. Zone height regulations shall be the same as in the B.L. (Business Light) Zone. Those are (§ 231) that no building shall exceed a height of 50 feet, or four stories, except (a) as provided in § 300 or (b) as provided by § 216, including setback requirements applicable in an R.A. Zone, if the applicant so requests. The exemption in § 300 seems to apply (but it is not wholly clear that it does) to the top story housing mechanical equipment, but either two stories or about 35 feet in excess of the ordinary limits fixed by § 231

would still be left. Nor would § 216 solve Loyola's problem. That section permits a maximum building height of "35 feet, except that any building may exceed such height of 35 feet, provided that at no point it projects above a line sloping inward and upward at a 45 degree angle from the 35 foot elevation at the required setback line." This proviso could not be met whether the "required setback line" be considered as 0 feet as it is with the variance allowed, or as 7½ feet, without the variance, because a front setback is required (even though none is on the sides or at the rear).

Loyola plans, however, 19-foot open spaces along each side and a single deck parking area at the rear of the building, over a parking lot and driveway about 70 feet in depth, thus leaving considerable open spaces for light and air where they would not be required under the B.M. set-back regulations, though the rear parking lot and deck are necessary in order to provide most of the required parking area (the balance being furnished by the lot across the alley). The parking space requirements, in practical effect, operate as a building area limitation.

Loyola offered expert testimony to show that as a result of the side setbacks and the rear parking area, the actual interference with light and air for neighboring properties was less than it would have been if a solid block type of building had been constructed, in accordance with the Regulations and without the need for a variance, on the entire permissible area to the height of 50 feet. Evidence was also offered to show that it was impracticable to provide basement parking, instead of outside parking, because of the presence of water in considerable quantity only about eight feet below the surface. There is nothing in the record to show that this condition was known to Loyola when it bought the lot.

The exact type of departure from the usual requirements of the Regulations here sought is a variance (*Montgomery County v. Merlands Club, Inc.*, 202 Md. 279, 288, 96 A. 2d 261), and pertains to height regulations and not to the use to which the property may be put. Section 307 of the Regulations deals specifically and only with variances from area and height regulations. It authorizes the Zoning Commissioner

and, on appeal, the Board "to grant variances from area and height regulations * * * where strict compliance with the * * * Regulations * * * would result in practical difficulty or unreasonable hardship." It then provides: "However, any such variance shall be granted only if in strict harmony with the spirit and intent of said regulations, and only in such manner as to grant relief without substantial injury to the public health, safety, and general welfare."

As to the latter requirement, we think, as did the learned trial judge, that the evidence was more than sufficient to meet the test that it should make the Board's finding thereon at least fairly debatable. In such circumstances its action in this regard is to be upheld, *Renz v. Bonfield Holding Co.,* 223 Md. 34, 43, 158 A. 2d 611, and cases there cited. We agree with the trial judge that there is no problem whatever with regard to this matter.

The grounds upon which the Circuit Court reversed the Board were that the other two requirements of § 307 were not met in that (a) the height variance would not be in strict harmony with the spirit and intent of the Regulations, and (b) there was no sufficient showing of practical difficulty or unreasonable hardship.

We find ourselves unable to agree with the first of these grounds. If the requested height variance were in strict accord with the *terms* of the Regulations, there would, of course, be no occasion for a variance. The question is whether it is in strict accord with the *spirit and intent* of the Regulations. In reaching his conclusion on this matter, the trial judge laid stress on the testimony of Mr. Dill, the Director of Planning of Baltimore County and a principal draftsman of the Regulations, to the effect that basically the purpose of putting a height regulation in the B.M. and apartment zones was to prevent one owner from pre-empting the advantages of light and air from the owners of abutting properties. He seems to have discounted heavily other testimony of Mr. Dill that the proposed building "complies with the element of providing, assuring light and air * * * even more effectively than what could be done under the Regulations without the variance, and I think that applies to the side yard setbacks,

which would not have to be there at all." The reason for discounting this testimony seems to have been because it took into account or was based in part on some "pyramid" or "tent" type of building setback worked out by another witness, Mr. Christie, an architect, on a quite different base from that prescribed in § 216. Mr. Dill thought Mr. Christie's approach more flexible and preferable to the rule of § 216. Though we fully agree with the trial judge that such a consideration would not authorize a court to rewrite the Regulations, we think that this evidence is pertinent and persuasive to establish compliance with the spirit and intent of the Regulations. Viewing it from that standpoint, we think that it should neither be rejected nor discounted. It would be difficult, we think, to maintain that the purpose of protecting the light and air of the neighboring properties was defeated by a variance granted upon terms protecting such light and air better than it would have been protected if a building had been constructed on the same site in strict accord with the Regulations, without any variance at all. It also should not be overlooked, though, as the trial court held, this fact would certainly not be of controlling importance, that the proposed building and parking facilities are in accord with the general core parking plan envisaged for the business section of Towson in which the Loyola lots are situated.

The remaining question is that of "practical difficulty or undue hardship." Rathkopf, *The Law of Zoning and Planning* (1960 Supp., p. 169, supplementing p. 647 of the text) points out that use variances are customarily concerned with "hardship" cases, where the land cannot yield a reasonable return if used only in accordance with the use restrictions of the ordinance and that a variance must be permitted to avoid confiscatory operation of the ordinance. See *Frankel v. City of Baltimore*, 223 Md. 97, 162 A. 2d 447, which was a case not merely of hardship, but of a taking in a constitutional sense (223 Md. at 101). Rathkopf next points out that area variances are customarily concerned with "practical difficulty." Section 307 of the Regulations uses the two terms in the disjunctive. It is firmly settled in this State that the mere fact that some use other than that permitted under an applicable zoning ordinance would be more profitable than any use which

is permitted thereunder is not enough to invalidate a use restriction, if the property can reasonably be used for some purpose for which it is adapted. *Walker v. Talbot County,* 208 Md. 72, 94, 116 A. 2d 393; *Serio v. City of Baltimore,* 208 Md. 545, 552-53, 119 A. 2d 387; *Marino v. City of Baltimore,* 215 Md. 206, 218, 137 A. 2d 198. It is also the general rule that in order to establish undue hardship in a use variance case,[2] it is necessary to show that the practical difficulties or undue hardship alleged are peculiar to the particular property affected. *Easter v. City of Baltimore,* 195 Md. 395, 73 A. 2d 491; *Marino v. City of Baltimore, supra; Frankel v. City of Baltimore, supra.*

A practical distinction is pointed out by Rathkopf, *op. cit. supra,* at 180-181 of the 1960 Supp., between a use variance and a height or area variance, citing two New York cases— *Otto v. Steinhilber,* 282 N. Y. 71, 24 N. E. 2d 851, a use case, and *Application of Bronxville v. Francis,* 1 A. D. 2d 236, 150 N. Y. S. 2d 906, aff'd 153 N. Y. S. 2d 220, 1 N. Y. 2d 839, an area case. In the latter case the Appellate Division pointed out that an area variance may be allowed on proof of practical difficulty only, and that the basis for this lesser requirement (i. e., lesser than the undue hardship showing required in use cases such as *Otto v. Steinhilber*) is that the character of the zoned district is not changed. Under the disjunctive form of § 307, it seems unnecessary to elaborate on this distinction or to determine whether it is an accurate reflection of the law of this State; but the distinction recognized in New York does emphasize the fact that variances going to such matters as area, height or setbacks, are much less drastic than those affecting the use of property. In *Frankel v. City of Baltimore, supra,* this Court (after holding invalid a restriction of certain property to residential use) pointed out (223 Md. at 105) that "[n]o testimony is in the record extract that purports to show that the office building proposed to be built had to

---

2. It should be borne in mind that because of the wording of the Baltimore City Zoning Ordinance, cases arising in that city dealing with special exceptions and variances use these terms more or less interchangeably. *Marino v. City of Baltimore, supra,* 215 Md. at 216.

be of the dimensions suggested, and that it was arbitrary action upon the part of the Board not to grant exceptions concerning these set-back requirements." This Court then remanded the case, without affirmance or reversal, for consideration of this question, including possible amendment of the application. We find nothing in *Carney v. City of Baltimore*, 201 Md. 130, 93 A. 2d 74, which conflicts with this disposition of the *Frankel* case. In *Carney* it was held that what amounted to personal inconvenience to an individual occupant of a house was not a sufficient hardship to warrant an area exception or variance under the Baltimore Ctiy zoning ordinance. The distinction between use variances and area or height variances here considered was not there discussed. The power of a board of zoning appeals to grant variances of the latter type is implicit in *Frankel*.

The terms of § 307 are applicable only to variances as to height and area. We see no occasion to construe that section otherwise than as it reads—in the disjunctive—"practical difficulty or unreasonable hardship," and we see no reason to construe "practical difficulty" here as the equivalent of a taking in the constitutional sense. In our estimation, the Board had at least sufficient evidence before it to make the question of practical difficulty a debatable one; and under the authorities above referred to, its order should, therefore, have been affirmed. It is true, of course, that Loyola knew, or was charged with knowledge of the applicable Regulations when it bought its properties, but it is not shown that it knew of the subterranean water condition. That seems to have forced Loyola to build on the front of its lot and to preserve the rear for parking purposes because it could not feasibly build a basement for parking use. This, in turn, prevented solution of its problem by building a four-story building covering a larger part of its lot, which it otherwise could have done without contravening the Regulations. This, we think, presents at least a case of "practical difficulty" within the meaning of § 307 of the Regulations. To ignore it and to restrict Loyola to a building of uneconomic size where, as here, the Board's findings that there is no injury to the public health, safety and general welfare and that the proposed variance is in strict

harmony with the spirit and intent of the Regulations should be upheld, would, we think, place too narrow a construction upon § 307, and would itself impose an unreasonable hardship on the applicant. Rathkopf points out, *op. cit., supra,* 1960 Cum. Supp., p. 179, that practical difficulty and undue hardship tend to overlap; and in *165 Augusta Street v. Collins,* 9 N. J. 259, 87 A. 2d 889, cited by Rathkopf, the view was stated that there is no practical difference between the two concepts under the zoning regulation there involved. In the instant case, the result, we think, is the same under the New York rule which seems to make a distinction between practical difficulty and undue hardship and the New Jersey rule which regards them as synonymous. In either event, in our opinion, the Board's finding that the applicant has satisfied the "practical difficulty" requirement of § 307 should also have been upheld.

In accordance with the above views, the order of the Circuit Court will be reversed and the case remanded for the entry of an appropriate order.

> *Order reversed and case remanded for the entry of an order affirming the order of the county board of appeals; the costs to be paid by the appellees.*