# ZENGERLE ET AL. *v.* BOARD OF COUNTY COMMISSIONERS FOR FREDERICK COUNTY

[No. 256, September Term, 1969.]

*Decided May 6, 1971.*

2

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*J. Edward Davis,* with whom were *Anne Kay Kramer* and *Weinberg & Green* on the brief, for appellants.

*Herbert L. Rollins,* with whom were *William W. Wenner, Thomas S. Glass* and *Rollins & Wenner* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

"Keep your nose to the wind" is an old adage that local government officials must ignore in choosing a location for a sanitary landfill. Reconciled to this odious but necessary task, the appellees, the Frederick County Board of County Commissioners, selected a reasonably isolated 104 acre farm a few miles east of Frederick city as the site and braced themselves for the inevitable barrage of objections from landowners who considered themselves

downwind from the proposed facility. Joseph C. Zengerle, Jr. from the nearby town of Ijamsville, Maryland, and twenty-eight other property owners are the appellants in this case. Opposing the Commissioners at every turn, they ultimately failed to dissuade the County Board of Appeals from granting a conditional use permit, special exception and variance, all three of which were necessary to fully use the farm as a landfill in compliance with the county zoning ordinances. They failed again on appeal before the Circuit Court for Frederick County (Clapp, J.) and, undaunted, they now seek review in this Court, where they principally argue that 1) the Appeals Board's tripartite action was arbitrary, capricious and illegal, and 2) there was insufficient evidence before the Board to make the issue of a proper site selection fairly debatable.

In an extensive and thoughtful memorandum Judge Clapp reviewed the myriad factual assertions and statutory interpretations that formed the basis of the Appeals Board's resolution of this dispute. Having carefully sifted through the same material we find no occasion to paraphrase what he has said or error in his conclusions. Keeping in mind that references to "this court" refer to the Circuit Court for Frederick County, we shall adopt his opinion as follows:

> "This is an appeal from an order of the Board of Zoning Appeals of Frederick County granting to the County Commissioners of Frederick County, the applicant and appellee, a conditional use for the operation of a sanitary landfill in an A-1 agricultural district. In addition, the Board granted to the County an area variance permitting the proposed landfill to be operated, as to certain portions, within 25 feet of the boundary line in question as against the ordinary zoning requirement for landfills, 'that the operations be confined to areas at least 200 feet distant from all adjoining property lines.'

The property upon which the proposed landfill is sought to be operated is known as the Boyer farm and contains 104 acres more or less. It fronts approximately 700 feet on the southern edge of Reichs Ford Road, a paved county road, described by the County Engineer as not the best but in the upper one-third of such roads, and it runs back in a southerly direction about 1,700 feet. There is a meandering stream running through the property from north to south through a deep ravine, which stream empties into Bush Creek, a tributary of the Monocacy River. There is also a smaller ravine cutting through the property about mid-way between the Reichs Ford Road at the north and the rear of the property at the south that runs from northeast towards the southwest and joins with the large ravine and stream.

As stated, the Boyer farm is in an agricultural district and the adjoining lands are mainly used as farms although there are some houses and lots near the property to the west, fronting on the southern edge of Reichs Ford Road.

Under the proposed variance the nearest dwelling will be 800 feet from a portion of the landfill.

### CHRONOLOGY OF THE CASE

Prior to October 16, 1967, the County Commissioners took an option upon the Boyer farm permitting the Board, amongst other things, to make preliminary tests looking to the use of the property for a sanitary landfill, the testimony in the case showing an urgent need in both the County and Frederick city for the disposition of waste and garbage. Thereafter, on October 16, 1967, the Board filed an application for a conditional use of the property as such a landfill

pursuant to county zoning regulations. 40-65(f). This section *on that date* provided for such use in an A-1 agricultural district as follows:

'Sec. 40-65 Conditional uses.

The following uses are conditional in the A-1 district, requiring authorization by the board:

(f) The disposal of garbage or refuse by the county or a municipality thereof, subject to the provisions of subsection (b) of section 40-143, provided, that these areas shall comply with five times the distance requirements of section 40-67. However, mechanical sewage treatment plants or sewage lagoons may be in any location recommended and approved by the Bureau of Environmental Hygiene of the Maryland State Department of Health and as approved by the Board.'

It will be noted that the Board of Appeals has original jurisdiction to hear such applications in accordance with Section 40-143, set forth in part *as then provided* as follows:

'Sec. 40-143 Same — Conditional uses and special exceptions.

(a) *Generally.* The board shall have the power to hear and decide, in accordance with the provisions of this chapter, applications filed as provided in this article, for conditional uses and special exceptions, or for decisions upon other special questions on which the board is authorized by this chapter to pass. In considering any application for a conditional use or special exception, the board shall give due regard to the nature and condition of all adjacent uses and structures. In authorizing a conditional use or special exception, the board

may impose such requirements and conditions with respect to location, construction, maintenance and operation, in addition to those expressly stipulated in this chapter for the particular conditional use or special exception, as the board may deem necessary for the protection of adjacent properties and the public interest.

(b) *Specifically*. In addition to permitting the conditional uses and special exceptions hereinbefore specified, the board shall have the power to permit the following conditional uses and special exceptions:

(1) * * * *

(2) Within any A or M district, the disposal of garbage or refuse by the county or a municipality or agents thereof.

(3) * * * *

In connection with any of the uses in this section, the board may require the installation, operation and maintenance in or in connection with the proposed use of such devices and methods of operation as may, in its opinion, be reasonably required to prevent or reduce hazardous or congested traffic conditions, odor, dust, smoke, gas, noise or similar nuisances and it may impose such other conditions and requirements as may be necessary, in its opinion, to protect adjacent properties and neighborhoods and prevent conditions which may become obnoxious or offensive. In authorizing a conditional use or a special exception, subject to compliance with certain conditions, the board shall require from the owners, lessees or tenants of the property for which this conditional use or special exception is granted such evidence, written agreement, guarantee or bond as it

may deem necessary to ensure that the conditions stipulated by the board are being and will be complied with. Any such written agreement may be required by the board to be recorded among the land records of the county at the expense of the applicant.'

Section 40-140 establishes the guides and standards to be applied by the Board of Appeals in considering such applications. This section *then and now* provides:

'Sec. 40-140. Same — Limitations, guides and standards.

Where, in this chapter, certain powers are conferred upon the board of appeals or the approval of the board of appeals is required before a permit may be issued or the board is called upon to decide certain issues, such board shall study the specific property involved and the neighborhood, cause the property to be posted in a conspicuous place, hold a public hearing, consider all testimony and data submitted, and hear any person for or against the issuance of the permit. However, the application for permit shall not be approved where the board finds the proposed building, addition, extension of building or use, sign, use or change of use would adversely affect the public health, safety, security, morals or general welfare or would result in dangerous traffic conditions or would jeopardize the lives of [sic] property of people living in the neigborhood. In deciding such matters the board shall give consideration, among other things, to the following:

(a) The purpose, application, interpretation and standards of these regulations as provided in sections 40-2 to 40-4.

8

(b) Decisions of the circuit court of the county and the court of appeals of the state.

(c) The orderly growth of the neighborhood and community.

(d) The most appropriate use of land and structure.

(e) Facilities for sewers, water, trash and garbage collection and disposal and the ability of the county to supply such services.

(f) Availability of fire-fighting equipment.

(g) The effect of such use upon the peaceful enjoyment of people in their homes.

(h) The number of people residing, working or studying in the immediate areas.

(i) The type and kind of structures in the vicinity where people are apt to gather in large numbers such as schools, churches, theatres, hospitals and the like.

(j) Traffic conditions, including facilities for pedestrians, such as sidewalks and safety zones and parking facilities available and the access of cars to highways.

(k) The preservation of cultural and historic landmarks.

(l) The conservation of property values.

(m) The effect of odors, dust, gas, smoke, fumes, vibrations, glare and noise upon the uses of surrounding properties.

(n) The contribution, if any, such proposed use, building or addition would make toward the deterioration of areas and neighborhoods.'

Four separate hearings were thereafter held by the Board of Appeals, testimony being heard both from witnesses for the County Commissioners and on behalf of the protestants to the application who are the present appellants.

During the course of these hearings, it became apparent that zoning regulation 40-65 (f) as it then existed was an obstacle to any use of the property as a sanitary landfill because that section creating the conditional use required compliance with five (5) times the distance requirements of Section 40-67 and that latter section provided in part, 'all uses, buildings or premises for which compliance with the distance requirements in this section is stipulated in the foregoing sections shall be distant at least 200 feet from any lot in any R-district or any lot occupied by a dwelling or by any school, church or any institution for human care located in the A-1 district and not located on the same lot as such uses or buildings.'

As Section 40-67 was interpreted by the Board of Appeals, no conditional use for a landfill could have been granted within 1,000 feet from the boundary line of an adjacent property occupied by a dwelling, no matter how far distant the dwelling. Accordingly, without any formal application being made for a variance, the Board in its approval of the conditional use of the property granted an area variance, this action being taken on December 15, 1967.

On June 11, 1968, following an appeal by the protestants and the hearing of arguments of counsel, this court entered an order remanding the case to the Board of Appeals for certain specific purposes. One of these was for the Board to consider the fact that the County Engineer had, without the knowledge of the protestants, communicated certain information to the Board by letter prior to its order on December 15, 1967, relating to preliminary approval of the site by the State Department of Health. This court in its remand desired that the Board

should give the protestants full opportunity to cross-examine the County Engineer, to present any evidence they desired in contradiction of his letter and then to reconsider its prior order in the light of all of the testimony.

A second reason for remand was the fact that one of the Board members had not been present at all four of the hearings and the court wished to be sure, that, before voting, he had fully familiarized himself with all of the testimony taken before casting his vote.

A third and the most serious reason for remand was the fact that there had been no formal application for the variance and the record did not show that the protestants had a full notice and opportunity to be heard in connection with the granted variance.

At the hearing of that first appeal this court indicated its view that the testimony with respect to the conditional use phase of the case appeared to present a fairly debatable issue but it made no formal finding in this connection because of the remand set forth above.

Before any additional action was taken by the Board of Appeals upon remand, the County Commissioners of Frederick County, pursuant to their legislative authority, made changes in the applicable zoning ordinances. Amongst other things, they deleted the first sentence in Sec. 40-65 (f) as previously set forth and all of Sec. 40-143 (b) (2) and inserted new wording therein relating to conditional uses and special exceptions as follows:

'Within any C, A, or M district the operation of a sanitary landfill by the county or municipality thereof, provided that the operations be confined to areas at least 200 feet distant from all adjoining property lines.

Final approval by the Board of Appeals shall be contingent upon approval of State Health Department and the State Department of Water Resources.

The following conditions shall be deemed mandatory:

    1. The site shall have a permanent caretaker in order to prevent unauthorized or unsupervised dumping.

    2. The operator shall provide screening necessary to prevent normal viewing into the landfill operations and to present an outwardly pleasant and maintained appearance.'

The case again came before the Board of Appeals for the taking of testimony in accordance with the remand order and it was there pointed out by the protestants that the above zoning amendment had not been filed with the clerk of the circuit court as required by Sec. 4 of Art. 25 of the Annotated Code and that, therefore, the amendment would not have the force of law. The Board did not decide the question but proceeded to take testimony on the theory that such evidence would be pertinent regardless of whether their decision had to be made under the former ordinance or under the amendment. This testimony related to the three matters for which the case was remanded but the hearing was not concluded.

The next day, on September 17, 1968, the amendment was duly filed in the office of the clerk of the circuit court for Frederick County and the hearing was resumed on October 1, 1968, at which time the filing of the amendment was called to the attention of the Board, and the protestants agreed that all testimony whether

taken before or after remand should be considered by the Board in connection wtih any further order. Some testimony was taken at this hearing but most of it consisted of arguments of counsel.

On October 16, 1968, the Board of Appeals, apparently being of the opinion that the remand order of this court required it to report back, filed a paper in this court signed by all three members as follows:

'This is to advise you that additional testimony was taken on September 16, 1968, and October 1, 1968, in accordance with your Decree of June 11, 1968.

It was determined from that testimony and testimony previously taken in this case that the following facts and conditions exist:

FIRST: That the property in question does have exceptional and extraordinary conditions applying to it and its intended use, that do not apply generally to other properties in the same zoning district. The topographic characteristics that make the site ideal for landfill operations, also present major difficulties if the zoning ordinance distance requirements are literally enforced. A variance in this case is necessary if the site is to be used fully for a sanitary landfill.

This site is long and narrow and if the zoning ordinance is literally enforced much of the property will be unavailable for the purpose of the filling operations. In reviewing the testimony, it was determined by the Board that the features of this property that make it particularly desirable for an "area fill" type of landfill, also make it necessary for the granting of a variance if the property is going to

be used to its fullest extent and left in the most desirable condition.

SECOND: The variance in this case is necessary for the preservation and employment of substantial property rights possessed by other properties in the same zoning district. The zoning ordinance permits sanitary landfills in A-1 District as a conditional use. Because of the extraordinary conditions of this property, it cannot be fully used as a sanitary landfill without granting a variance.

THIRD: That the authorization of a variance will not be of substantial detriment to adjacent property and will not materially impair the purposes of this ordinance, or the public interest. As a matter of fact, the granting of the variance will be an advantage to the adjacent property owners in that the operation will be less visible and the property left in a better condition than if the variance is not allowed. Further, the granting of the variance will not impair the purposes of this zoning ordinance in that it still will permit the orderly growth of the County and, as a matter of fact, will greatly help the public and the purposes of the zoning ordinance. Recent sales of property directly across the road from the property in question have indicated that prospective purchasers do not consider the sanitary landfill a detriment. The operation of the sanitary landfill on this property would be in the public interest since it is imperative that the County arrange for the disposal of garbage and refuse belonging to the public.

FOURTH: There is little chance that this permitted variance will re-occur since there

are very few other properties suitable for a sanitary landfill that have the same characteristics as the one in question and that there is no chance that the granting of this variance will be of a general or recurring nature as to make it a general regulation for such conditions or situations.

FIFTH: That in accordance with said Decree, testimony was taken and the protestants given an opportunity to cross-examine Southey T. Nottingham, County Engineer, on the letter written by him to the members of the Board of December 8, 1967, and that additional testimony was taken concerning the Board members familiarizing themselves with the entire record before voting.

That record will disclose that the Board has granted a variance in this case by permitting the disposal of garbage and refuse in an area that is not closer than eight hundred (800) feet to an existing dwelling. The applicant has indicated that in view of a change in the ordinance concerning distance requirements, it is willing to have the variance modified as follows: That the operation shall be confined to an area at least two hundred (200) feet distant from all adjoining property lines (in accordance with change of zoning ordinance dated July 28, 1968), except beginning at Point "A" on the west property line of said property a distance four hundred fifty (450) feet from the center line of Reich's Ford Road, said operation shall be confined to an area not closer than fifty (50) feet to the adjacent property owner, and that at Point "B" which shall be eight hundred (800) feet south of Point "A" on the west property line of said property, the operation shall not be closer

than twenty-five (25) feet to the adjacent property line and in between Points "A" and "B" the distance required between the operation and the adjoining property line shall be progressively decreased from Point "A" and Point "B" by drawing a straight line between said points. The operation shall then be confined to an area not closer than twenty-five (25) feet in width from Point "B" on the west property line to Point "C" which shall be seven hundred (700) feet in a southerly direction along the western property line from Point "B" where the variance shall terminate.

In view of the fact that the modification creates less variance than that originally granted by the Board, we are in hopes that the Court will modify the variance previously granted in accordance with the applicant's request upon the stipulation by the applicant that it does not object.'

Counsel for the County Commissioners and the protestants, apparently were both of the same opinion in that a hearing date before the Court was requested but the Court pointed out that there was nothing before it for hearing. Thereafter, the Board of Appeals on October 22, 1968, upon motion recorded in the minutes and unanimously adopted, decided to amend its decision of December 15, 1967, previously appealed to this Court and then remanded so as to authorize the County Commissioners to operate a sanitary landfill for the disposal of garbage and refuse on the property, subject to the following conditions:

'1. No burning shall take place on the site (known as the Boyer farm) and all refuse shall be covered daily as specified in the regulations of the State Health Department.

2. All regulations of the State Health Department pertaining to the operation of a sanitary landfill shall be complied with.

3. Efforts shall be made to control wind-carried refuse and to minimize any siltation and/or erosion that might occur.

4. Efforts shall be made to minimize any potential pollution that may exist to surface or ground water supplies.

5. A full time caretaker shall be located on the site to control and police operations.

6. Refuse trucks under County control shall have and use covers to prevent the blowing of refuse while trucks are enroute to this site.

7. Additional screening of the site shall be done by the planting of an evergreen screen consisting of one or all of the following coniferous species:

    a. Scotch pine (Pinus sylvesteris) and/or;

    b. White pine (Pinus strobus) and/or;

    c. Eastern Red Cedar (Juniperous virginiana).

The trees shall be an average of 4 to 6 feet in height above the grade of Reichs Ford Road, at the time of planting.

At the same time, the Board of Appeals granted the variance previously described, all subject to approval of the State Health Department and the State Department of Water Resources concerning the operation of the sanitary landfill on the property.

An appeal was duly noted to this court by the protestants from the above action and in their petition of appeal the protestants claim that the action of the Board of Appeals was arbitrary, capricious, unreasonable, discrimina-

tory and illegal for various reasons that will be discussed subsequently.

## THE CONDITIONAL USE AND SPECIAL EXCEPTION

It is to be noted that under the provisions of Section 40-65 (f), as at the time of application for use of the Boyer farm as a sanitary landfill, the use sought was designated as a 'conditional use.'

By the amendment to the zoning regulations adopted by the County Commissioners on July 28, 1968, and filed with the Clerk of the Court on September 17, 1968, the proposed use under Section 40-143, is under the heading, 'Conditional Uses and Special Exceptions.' This difference in drafting technique and in wording is not deemed to be important to a decision of this case because the law applicable is the same no matter what the use is labeled.

The authority of the courts on appeals from decisions of zoning boards is strictly limited. Where an issue before such a Board of Appeals is shown by the record to be fairly debatable, its action on that issue cannot be disturbed and a court cannot substitute its judgment for the judgment of the Board. *Montgomery County v. Merlands Club*, 202 Md. 279. This principle is so firmly established that no further citation of authority is necessary.

The rule applies with full force as to special exceptions. For instance, in *Finney v. Halle*, 241 Md. 224, a circuit court had reversed the decision of a Board of Zoning Appeals granting a special exception. The Court of Appeals reversed the circuit court, saying at page 241,

'In considering the special exception, the Board acts as a body of zoning experts and

the area of judicial review is quite limited. As Judge Delaplaine, for the Court, aptly stated in *Oursler* . . . :

"The function of a zoning board is to exercise the discretion of experts, and the court on appeal will not disturb the board's finding where it has complied with the legal requirements of notice and hearing, and the record shows substantial evidence to sustain the finding."

(Page 405 of 204 Md.; page 572 of 104 A. 2d).'

There was ample evidence in this case before the Board of Appeals to justify the granting of this conditional use and special exception. There was testimony by the county planner of the great need of the county for the disposition of waste and garbage. A study of the county divided it into zones for this purpose and the Boyer farm was found to be most appropriate from a location standpoint. Its ability to handle traffic and its terrain made is especially suitable. Under projections for future county development, this particular area was found to be less likely to develop in the reasonably foreseeable future for residential purposes because other areas would probably be sooner served with either public sewer, water or both.

It is true that this testimony was vigorously contested by the protestants but this court cannot say that the action of the Board of Appeals was clearly wrong in giving more weight to the testimony presented by the applicant. Thus, the issue before the Board was fairly debatable and this court is without authority to reverse it.

It should be added that some of the protestants seem to have been under a misapprehen-

sion as to the nature of the requested use. One of the protestants stated, 'I kinda feel it is a breach of trust to go into a residential area like this and pick out a nice site and use it for an industrial use. To answer your question, I think it would be detrimental.'

It should be remembered that this area was not zoned residential but agricultural. It also should be remembered that the use applied for was not an industrial use but a conditional use or special exception permitted under definite restrictions in agricultural zones.

The distinction between rezoning and conditional use or special exception was clearly defined by the Court of Appeals in *Cadem v. Nanna*, 243 Md. 536, 543.

'The words "special exception" are well known in zoning law. They refer to a grant by the zoning administrative body pursuant to the existing provisions of the zoning law and subject to certain guides and standards, of a special use permitted under the provisions of the existing zoning law. (Citing authorities.) Rezoning or reclassification is, of course, a *change in the existing law itself,* so far as the subject property is concerned. This type of change in the zoning law is governed by quite different provisions of law from those governing the granting of special exceptions.'

The guidelines for determination by the Board of Appeals in applications for conditional uses and special exceptions are set forth in Sections 40-140 and 40-143 and the record discloses that the Board in reaching its decision gave consideration to these guidelines.

## THE VARIANCE

The appellants contend that the Board of Appeals had no authority to grant any variance because Section 40-133 provides that applications in cases in which the Board of Appeals has original jurisdiction, 'shall be filed with the zoning administrator, who shall transmit same to the Board.' Admittedly, no such application for a variance has been filed with the zoning administrator and, consequently it could not have been transmitted by him to the Board of Appeals. Clearly, however, under the terms of the remand from this Court to the Board of Appeals, the question of a variance was to be considered and decided by the Board. In addition, at the first hearing after remand, counsel for the protestants addressed one of his clients as follows, 'You, of course, are aware that the Board of Appeals is here being asked to grant a variance from the existing zoning regulations, which is the pink strip to be a variance, and once granted, it would pave the way for the location of a landfill on the Boyer farm.' The answer was, 'Yes.'

Obviously all concerned were fully apprised of the nature of the hearings and that the county was seeking an area variance. Counsel for the protestants made no objection to the absence of a formal variance application and the hearings on this question, subsequent to remand, were conducted without protest on this point. Had any such objecton been made before the Board, the defect could have been promptly remedied. It is my opinion under these circumstances that there has been substantial compliance with the zoning regulations and that the protestants have had ample notice and an opportunity to be heard on the variance question.

The Court of Appeals has stated, 'We have already pointed out that, generally, administrative agencies are not bound by the technical rules of evidence and all the procedures afforded in a trial in a court of law, provided such agencies observe the basic rules of fairness to parties appearing before them.' *Hyson v. Montgomery County,* 242 Md. 55.

Appellants make the further contention that where one purchases realty intending to apply for a variance from zoning restrictions, he cannot contend that such restrictions cause him the undue hardships that would entitle him to such variance, citing *Gleason v. Keswick Improvement Association,* 197 Md. 46. This same rule has been relaxed where there has been an application for area variance such as here, as distinguished from a use variance as in *Keswick,* the Court of Appeals pointing out that a use variance is customarily concerned with unusual hardship where the land cannot yield a reasonable return without a variance whereas an area variance is primarily concerned with practical difficulties. *Loyola Federal Savings & Loan Assoc. v. Buschman,* 227 Md. 243.

Section 40-145 permits a variance where practical difficulty or unnecessary hardship is present. Since this is an application for an area variance and since there was testimony of practical difficulty in the absence of the grant of a variance, the rule announced in *Keswick* does not apply.

Moreover, in *Stacy v. Montgomery County,* 239 Md. 189, an area variance was approved by the Court of Appeals where a party had purchased a property intending to apply for a special exception. The need for an area variance was not determined until after the special ex-

ception had been granted. That is substantially what happened in the present case and *Stacy* is further authority for holding that the rule in *Keswick* does not here apply.

Appellants further contend that the Board was without authority to grant a variance because at the hearing on September 16, 1968, the amendment to the zoning regulations had not at that time been filed with the clerk of the court. Assuming that this rendered the amendment inoperative as at that date, it was duly filed the next day. A further hearing was subsequently held, and, as previously stated, counsel for both parties appear to have agreed that all testimony whether taken before or after remand, should be considered in any new finding and order of the Board of Appeals.

The 'report' of the Board filed in this court on October 16, 1968, and the minutes of October 22, 1968, make it appear that the Board in reaching its findings and order considered itself governed by the amendment. This is in accordance with the rule that where a zoning ordinance is amended, after the filing of an application but before decision, the law applicable is the ordinance as amended which is in existence when the Board makes its decision. See Rathkopf, *The Law of Zoning and Planning,* 1967 Cumulative Supplement to Vol. I, Sec. 4, page 327.

The mere amendment of the zoning ordinance did not nullify testimony taken before filing of the amendment with the clerk. The Board had authority under the terms of the remand from this court to take further testimony and if the amendment was without force on September 16, 1968, the Board had authority to take testimony under the regulations before amendment.

I cannot agree with the contention of the appellants in this respect. * * *."

Instead of affirming the Board of Appeal's decision at this point, Judge Clapp remanded the case to clarify one final aspect of the record. This was done because the Board's minutes did not reflect that the facts and conditions necessary to sustain a variance had been found "beyond a reasonable doubt," as required by § 40-145 (b) of the Frederick County Zoning Regulations. The Board made this clarification and upon return of the case to the Circuit Court, its decision was affirmed on the basis of the quoted memorandum. Because of the unusual requirement that a county agency find that variance prerequisites exist "beyond a reasonable doubt," we think a brief comment is in order.

Proof "beyond a reasonable doubt" is but an increase in degree when compared with proof by a preponderance of the evidence. Perceiving no difference between proof beyond a reasonable doubt in a criminal or civil matter, we accept the conclusion of the cases which discuss the phrase that this higher standard of proof is addressed to the judgment and conscience of the inquiring authority. The phrase is largely self-defining and needs little amplification. As used here it calls for a higher degree of conviction than that demanded by the preponderance of the evidence rule before the Board can conclude the requirements of § 40-145 (b) have been satisfied. *Berry v. State,* 202 Md. 62, 67-68, 95 A. 2d 319 (1953), see generally 36 Words and Phrases, "Reasonable Doubt" 483-544.

The appellants make one additional point. Coupled with their attack on the variance, they argue that the entire proceeding before the Board of Appeals was invalid because the Board of County Commissioners had not specifically authorized its president to apply for a conditional use permit or a special exception. We reject this contention. The record discloses that the Board did au-

thorize him to acquire an option on the Boyer farm and to determine if the site could be utilized as a landfill. We think this not only permitted the explicitly mentioned soil and engineering feasibility tests but also any other preliminary determinations which would enable them to decide if the option should be exercised. To purchase this property for $45,000 without the knowledge that the farm could be legally utilized for a landfill would have been the height of imprudence. Requiring the Board to pass an additional resolution to perform a ministerial task necessary to carry out its original objective, which had already been approved, would be redundantly burdensome and not required by law. *Johns Hopkins Bldg. Co. v. Balto.,* 130 Md. 282, 283, 100 A. 298 (1917).

*Order affirmed. Costs to be paid by the appellants.*