SEMBLY ET AL. *v.* COUNTY BOARD OF APPEALS
OF BALTIMORE COUNTY

[No. 300, September Term, 1972.]

*Decided May 29, 1973.*

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

*John W. Hessian, III,* with whom was *J. Michael McLaughlin, Jr.,* on the brief, for appellants.

*Irvin N. Caplan,* with whom was *Robert J. Romadka* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Baltimore County (Maguire, J.) affirming a decision of the Baltimore County Board of Appeals, which granted a special exception for a "community building" to the O'Neill Club of Towson, Inc. (the club), an affiliate of the Knights of Columbus. Appellants were protestants in the proceedings before the Board of Appeals.

The club's property consists of approximately 2.3 acres in the Eighth Election District of Baltimore County near Lutherville. It is approximately 675 feet east of the "Baltimore-Harrisburg Expressway" (Interstate 83) on the north side of Seminary Avenue. There is no access to the expressway at that location. The property is in the D.R. 5.5 zoning classification; this signifies density residential, 5.5 dwelling units to the acre. The club proposes to erect a one-story structure, 50x100 feet in size, on a site having frontage of 100 feet on Seminary Avenue. There would be a "stockade" type fence six feet high on the north and east sides of the premises. Parking spaces for 120 automobiles would be provided; outside lighting would be directed away from adjoining properties.

The principal exhibit admitted into evidence was a site plan which indicates that "all trees not in [the] immediate

area of construction [are] to be *saved.*" (emphasis in original). There was testimony that this would result in a band of trees — 50 feet in width — between the subject property and single-family property to the north and east. Originally, the club owned a single tract of 10.33 acres, 7.9 of which were subsequently placed in the D.R. 16 zone (residential apartment, 16 units per acre) upon adoption of the county's comprehensive rezoning map in 1971. The tract has now been divided, and the latter parcel is between the subject property and the expressway.

In 1966, the club was granted a special exception for a "community building" to be built on what was then the entire 10.33-acre tract, but that permission expired because the club failed to initiate the use within the required two-year period. At that time, a building containing 22,000 square feet with 334 parking spaces was proposed. The current application contemplates a building closer to the south and east than that planned in 1966.

Although now only 24 feet wide, Seminary Avenue, in conjunction with the imminent widening of Interstate 83, will become a 36-foot roadway between the entrance to the club and the expressway. Since Seminary is a state road, the entrance to the club will be subject to the requirements and approval of the State Highway Administration.

The president of the club testified that the O'Neill Council has approximately 200 members, but that only 15% usually attend its semi-monthly meetings. There are also officers' meetings twice a month. It usually has no more than six dances a year, and the ladies' club would use the building for its meetings once a month. Meetings are always in the evenings, usually from 8:30 to 10:30 or 11:00. The dances are generally on Saturday nights. The fire code would limit the building occupancy to 250 people at any one time. Although the president stated that there is no present intention to rent the facilities, his testimony in this regard was equivocal, and undoubtedly permits the inference that the building might be used by other groups. No functions would be held outside the building, since there is not sufficient room for that purpose.

There are single-family homes to the south on the other side of Seminary Avenue which were described as an "older type development of frame type residences." Precisely what that characterization means is not revealed by the record. Immediately to the east of the subject property — some 70 feet from the property line — is a ranch-type dwelling, the occupant of which did not appear as a protestant. There is also a subdivision to the north, *i.e.*, to the rear of the club property, but this is farther away than the dwellings on Seminary Avenue and would be screened by the trees.

There is a sharp conflict in the evidence concerning the impact the proposed use would have on traffic. Whereas witnesses for the club testified that evening traffic on Seminary Avenue is relatively light and causes no congestion after 7:00 P.M., appellants produced testimony to the effect that daily traffic is heavy until 10:00 P.M.; that the absence of sidewalks on Seminary presents a danger to pedestrians; that it is presently a two-lane roadway and the proposed widening would afford no relief for traffic to the east of the subject property.

To establish that the proposed use would not be "detrimental to the health, safety or general welfare of the locality," the club presented Mr. Frederick P. Klaus as an expert witness. His reasons in support of that view were: That with the exception of the "ranch house" occupant, those living to the north and east would be screened from the club by the trees, thus leaving only a "few" neighbors across Seminary Avenue who would have visibility; that there would be no outdoor activities; that the building would be limited in size; and that the property had been used as a "dumping ground" for many years and would be enhanced by approval of the application.

There was also evidence in the record that a permit would be necessary for all grading, including the stripping of topsoil; that drainage studies and sediment-control drawings would require approval; and that the club must provide such drainage facilities as may be necessary to prevent damage to adjacent land by the concentration of surface waters. In addition, approval of the county health department would be required for any food service facilities.

Prior to reaching the Board of Appeals, the application had been approved by the zoning commissioner, subject to three conditions which the Board also imposed subsequently. The zoning commissioner's decision was appealed to the Board of Appeals, which granted approval after finding:

" . . . that the proposal will satisfy all the requirements of . . . the zoning laws and regulations of Baltimore County and would have no adverse effect on the value or use of the nearby homes . . . .

"The few protestants who appeared were concerned almost entirely with the possible effect of traffic on Seminary Avenue. However, evidence indicated that a proposed widening of Seminary Avenue is under way, and that the bridge over the expressway is now under construction to make it considerably wider. While it is true that the construction of many homes west of the expressway has substantially increased the daily traffic on Seminary Avenue, at least as far eastward as Front Avenue in Lutherville, we do not believe that the proposed use of the special exception would make the situation any worse and the proposed widening of Seminary Avenue will relieve most of these difficulties. Therefore, the decision of the Zoning Commissioner will be affirmed, including the same conditions imposed by his Order[:]

"1. That no affair, meeting, etc. shall take place or continue beyond 1:00 A.M., except Fridays and Saturdays.

"2. That the development of the plans shall be in substantial accordance with the plat submitted as revised.

"3. The site plan shall be subject to the approval of the State Highway Administration, the Bureau of Public

Services and the Office of Planning
and Zoning."

On appeal to the circuit court, Judge Maguire, after
quoting the legal principles that govern the scope of judicial
review in such cases, affirmed the decision of the Board,
saying:

" . . . that a reasoning mind could reasonably have
reached, upon a fair consideration of the entire
record, the same conclusion as that of the Board,
and hence its action was not arbitrary or capricious
or illegal, but, on the other hand, was fairly
debatable. Having determined this, the Court has
fulfilled and exhausted its limited judicial function
in reviewing a zoning appeal."

The Baltimore County Zoning Regulations impose several
conditions or criteria for the granting of special exceptions;
appellants focus their attack upon two of them:

"502.1—Before any Special Exception shall be
granted, it must appear that the use for which the
Special Exception is requested will not:

"a. Be detrimental to the health, safety, or
general welfare of the locality
involved;
"b. Tend to create congestion in roads,
streets or alleys therein;"

Appellants contend that the findings on these criteria were
not supported by substantial evidence.

We have consistently held that on judicial review of
decisions granting or denying special exceptions, the correct
test to be applied is whether the issue before the
administrative body is "fairly debatable," that is, whether
its determination is based upon evidence from which
reasonable persons could come to different conclusions. If
the questions involved are fairly debatable and the facts
presented are sufficient to support the Board's decision, it
must be upheld, *Gerachis v. Mont. Co. Bd. of Appeals*, 261
Md. 153, 156, 274 A. 2d 379 (1971); *Eger v. Stone*, 253 Md. 533,

542, 253 A. 2d 372 (1969); *Crowther, Inc. v. Johnson,* 225 Md. 379, 383, 170 A. 2d 768 (1961). Hence, where we conclude that the issues are fairly debatable, we will not substitute our judgment for that of the administrative body, unless its action is shown to be arbitrary, capricious or illegal, *Prince George's Co. v. Meininger,* 264 Md. 148, 154, 285 A. 2d 649 (1972); *Cason v. Bd. of Co. Com'rs,* 261 Md. 699, 707, 276 A. 2d 661 (1971); *Tauber v. County Bd. of Appeals,* 257 Md. 202, 212, 262 A. 2d 513 (1970); *Eger v. Stone, supra.*

We think that on the two issues raised by appellants, there was sufficient evidence presented to the Board by the club to make those questions fairly debatable. There was, for example, evidence from which the Board could find that club activities would be confined to the indoors, and would not extend into the late hours on weekdays; that social functions would likely be restricted to Saturday nights; and that attendance would be limited by the size of the building and the fire-prevention code.

There was also evidence that the club would be screened from the residents of the homes to the north and east; and that no damage would result to neighboring property from construction of the building. All this, coupled with other evidence we need not repeat, when considered by the Board, was sufficient to make fairly debatable the issue of whether the special exception would "be detrimental to the health, safety, or general welfare of the locality involved."

Similarly, we regard as a fairly debatable issue, the impact that the special exception might have upon traffic. We have already noted that the evidence on this question is in sharp conflict. The Board could have found, however, as in effect it did, that the widening of Seminary Avenue between the subject property and the expressway was "reasonably probable of fruition in the foreseeable future," *Chapman v. Montgomery County,* 259 Md. 641, 649, 271 A. 2d 156 (1970); *Kaslow v. Rockville,* 236 Md. 159, 168, 202 A. 2d 638 (1964); *Rohde v. County Board,* 234 Md. 259, 264, 199 A. 2d 216 (1964). Also supported by the evidence is its finding that the proposed use would not add to existing traffic problems east of the subject property; and that the

anticipated widening, although to the west, would have a beneficial effect

Concededly, the evidence in this case may be "thin" in certain respects, but it is nevertheless sufficient to support the findings of the Board. In *Eger v. Stone, supra,* Judge Barnes aptly said, for the Court, what we think is especially apposite here:

> "This rule [if the issue is 'fairly debatable,' we will not substitute our judgment for that of the administrative body] will be adhered to even if we were of the opinion that the administrative body came to a conclusion we probably would not have reached on the evidence. In the instant case, but for the rule, we might well have reached the conclusion [that the Board of Appeals erred], but in enforcing the rule we are obliged to say that reasonable persons could have reached a different conclusion on the evidence so that the issues were fairly debatable, and hence, the decision of the Board must be sustained." 253 Md. at 542.

We are of the view that Judge Maguire applied the correct test and, therefore, reached the only permissible result in this case.

*Order affirmed; appellants to pay costs.*