# McLEAN *v.* SOLEY

[No. 23, September Term, 1973.]

*Decided November 7, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Richard F. Cadigan* for appellant.

*W. Lee Harrison,* with whom was *Cooper C. Graham* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Baltimore County which affirmed a decision of the County Board of Appeals of Baltimore County (the Board) granting a variance from the side yard window setback requirement contained in the county zoning regulations. Appellee, Joseph L. Soley (Soley), had applied for the variance in connection with his proposed apartment house-office building project, and appellant, William H. McLean, Jr. (McLean), who lives in a house adjacent to the Soley property, was the only protestant.

The property in question is located on the north side of Aigburth Road approximately 324 feet east of York Road. Immediately to its west is a development previously built by Soley known as Cardiff Hall East Apartments, which also combines apartment units and office space. The McLean property, including his residence, is situated immediately to the east and fronts on Aigburth Road. The subject property, consisting of 2.43 acres, is rectangularly-shaped with the south end also fronting on Aigburth Road. The rear end of the parcel backs up on an alley which separates it from a development of detached homes called "Burkleigh Square."

Solely proposes to erect two rectangularly-shaped buildings, each to contain 20 dwelling units, positioned upon the parcel in a north-south direction. In other words, the south end of one building would front on Aigburth Road and the north end of the second would back up on the alley.

The adjacent parcel to the west, previously developed by Soley, consists of 4.44 acres and is improved by 60 units. Since the property is in the D.R. 16 classification, as is the

McLean property, it permits 16 dwelling units to the acre; and by treating the two parcels as one unit for density purposes, as Soley was permitted to do, it could properly accommodate 110 units.

Although Soley was required to seek relief from the strict requirements of the Baltimore County Zoning Regulations in several respects, only one is of concern in this appeal. Section 1B01.2C2a of the zoning regulations provides:

> "a. Where any dwelling unit window within a subdivision faces a property line which is not a street line prior to the time of development but, otherwise, which forms any part of the tract boundary, the window shall not be closer than 35 feet to the boundary."

When Soley initially filed his petition for a variance, he asked for a reduction in the above-described requirement from 35 to 10 feet for the southernmost (front) building in relation to McLean's property line. His principal reason for this request was — and remains — the retention of "the present trees and natural growth, terrain, and topography which provides excellent drainage and natural screening and beauty." In a word, therefore, this dispute is over trees. McLean in his testimony describes the issue poetically: "It is a question of a tree or me; I think I am more important than the tree."

After this petition was presented to the Zoning Commissioner of Baltimore County, he ordered that it be granted, but modified Soley's application by reducing the setback requirement from 35 feet to 20 feet instead of the requested 10 feet. That decision was affirmed by the Board which rejected McLean's contention that the variance "would interfere with his light, air and privacy," and determined that Soley "would suffer a practical difficulty and unreasonable hardship if the requested variances were not granted."

In addition to his own testimony, at the Board hearing Soley also presented two expert witnesses, an engineer and

an arborist. Soley's testimony established that he is dedicated to preserving as many existing trees as he can in his building projects, including the one proposed here. This objective influenced the development of the first apartment complex, and it has been fully occupied during its entire six-year existence. He explained — and this was supported by the two experts — that if he chose to destroy the existing trees, he could build 110 units without requiring the contested variance.

Soley also described the meticulous care which he, the engineer and the arborist have taken on the first project in "pinpointing" the existing trees and in designing the projects "around" them. For example, the parking areas were built with "notches" and "cutouts" wherever trees were located, all at substantial expense to Soley. It was also established that the loss of a number of attractive trees running along the western boundary of the subject property would result if the buildings were constructed without the variance.

In short, Soley's case is that the preservation of these and other trees situated about the parcel depends upon the variance from the 35-foot requirement; and there was considerable evidence to show the natural beauty of these trees and their importance to the ecology. On the other hand, the loss of existing trees, if the variance is granted, would be relatively minor. Thus, it is claimed, denial of the variance would result in a "practical difficulty or unreasonable hardship," and would have a detrimental effect on the welfare of the community.

It was also established that even with the variance, since the McLean house is set back 28 feet from its property line, it would be 48 feet from the proposed apartment building. The engineer testified that this exceeds the county requirement for a 40-foot "window-to-window" relationship.

The evidence summarized above has not been seriously challenged by McLean. His complaint is that the reduction of 15 feet "will contribute to a greater invasion of my [yard] privacy, and I think that despite anything to the contrary, the summer breezes are going to be snuffed off, and, in a way, impair the enjoyment of the rear property."

As we have indicated, the Board decision was upheld by the circuit court which based its decision upon the test enunciated in *Loyola Loan Ass'n v. Buschman,* 227 Md. 243, 176 A. 2d 355 (1961); and held that the evidence of whether strict compliance with the regulations would result in practical difficulty or unreasonable hardship was fairly debatable. Hence, the Board had not been arbitrary, unreasonable or capricious in reaching its decision. We agree and shall affirm that judgment.

Succinctly stated, McLean's argument in this Court is that whatever the degree of practical difficulty or hardship required for a variance, neither is shown here; and that the request is "merely for the convenience of the applicant," *Carney v. City of Baltimore,* 201 Md. 130, 137, 93 A. 2d 74 (1952). In our view, McLean reads the requirements for a variance too severely.

We think the facts in *Carney, supra,* upon which McLean places his principal reliance, are distinguishable from those at bar. There, a homeowner sought a variance from a sideyard requirement for the purpose of building a bedroom and bath on the ground floor of his house due to his wife's physical condition. The adjacent property owner objected because the variance would have deprived him of light in his dining room. This Court upheld the Board of Appeals decision denying the requested variance. There, we said:

> " . . . The need sufficient to justify an exception must be substantial and urgent and not merely for the convenience of the applicant, inasmuch as the aim of the ordinance is to prevent exceptions as far as possible, and a liberal construction allowing exceptions for reasons that are not substantial and urgent would have the tendency to cause discrimination and eventually destroy the usefulness of the ordinance. (citation omitted).
>
> "The expression 'practical difficulties or unnecessary hardships' means difficulties or hardships which are peculiar to the situation of the applicant for the permit and are not necessary to

carry out the spirit of the ordinance and which are of such a degree of severity that their existence amounts to a substantial and unnecessary injustice to the applicant. Exceptions on the ground of 'practical difficulties or unnecessary hardships' should not be made except where the burden of the general rule upon the individual property would not, because of its unique situation and the singular circumstances, serve the essential legislative policy, and so would constitute an entirely unnecessary and unwarranted invasion of the basic right of private property. (citations omitted)." 201 Md. at 137.

We think the cases are distinguishable in that there the Board of Appeals determined that the variance was based on convenience rather than practical difficulty; and, furthermore, no benefit to any other persons was established.

In our view, this case is controlled by *Loyola Loan Ass'n v. Buschman, supra.* There, the applicant sought a variance from the height limitations for a proposed office building. Two additional floors were required because the side setback and parking space requirements made it necessary to build the structure in that manner. The standard for granting a variance then, as it is now, was whether strict compliance with the regulations would result in "practical difficulty or unreasonable hardship"; and that it should be granted only if in strict harmony with the spirit and intent of the zoning regulations; and only in such manner as to grant relief without substantial injury to the public health, safety and general welfare.

There we noted that the requirements "practical difficulty or unreasonable hardship" are in the disjunctive. Thus we said:

"The terms of § 307 are applicable only to variances as to height and area. We see no occasion to construe that section otherwise than as it reads — in the disjunctive — 'practical difficulty or

unreasonable hardship,' and we see no reason to construe 'practical difficulty' here as the equivalent of a taking in the constitutional sense. In our estimation, the Board had at least sufficient evidence before it to make the question of practical difficulty a debatable one; and under the authorities above referred to, its order should, therefore, have been affirmed. ... This, we think, presents at least a case of 'practical difficulty' within the meaning of § 307 of the Regulations. To ignore it and to restrict Loyola to a building of uneconomic size where, as here, the Board's findings that there is no injury to the public health, safety and general welfare and that the proposed variance is in strict harmony with the spirit and intent of the Regulations should be upheld, would, we think, place too narrow a construction upon § 307, and would itself impose an unreasonable hardship on the applicant. . . ." 227 Md. at 250-51.

We think it clear that the evidence in this case was fairly debatable on the issue of "practical difficulty." In 2 Rathkopf, *The Law of Zoning and Planning*, (3d ed. 1972) 45-28, 29, the following criteria for determining whether "practical difficulty" has been established are set forth:

"1) Whether compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.

"2) Whether a grant of the variance applied for would do substantial justice to the applicant as well as to other property owners in the district, or whether a lesser relaxation than that applied for would give substantial relief to the owner of the property involved and be more consistent with justice to other property owners.

"3) Whether relief can be granted in such fashion

that the spirit of the ordinance will be observed and public safety and welfare secured."

Given the unique facts of this case, we think those criteria are met by this evidence: That the construction of the buildings in strict compliance with the sideyard requirements would result in the destruction of the trees; that the preservation of trees in the construction of the first section had contributed to full occupancy for its entire six years; that the benefits of retaining the trees would accrue to the general public; that greater density would result from strict compliance; and that there was only meager evidence to support the contention that a detriment would befall the neighboring property owner.

It is also contended by McLean that Soley is precluded from asserting "practical difficulty" because he was charged with knowledge of the sideyard requirements when he purchased this property. We see no merit in this argument. We noted in *Zengerle v. Bd. of Co. Comm'rs*, 262 Md. 1, 21, 276 A. 2d 646 (1971), citing *Loyola, supra*, that this "rule" is more strictly applied in "use variance" cases than in cases of "area variances," such as the one at bar. In other words, it has less significance where we are concerned with "practical difficulty" than it does in the event of "hardship" which usually characterizes the "use variance" cases.

Concededly, this is a close case, but it is nevertheless sufficient to support the findings of the Board. Under similar circumstances, we said in *Sembly v. County Bd. of Appeals*, 269 Md. 177, 304 A. 2d 814 (1973), quoting with approval from *Eger v. Stone*, 253 Md. 533, 542, 253 A. 2d 372 (1969):

> " 'This rule [if the issue is "fairly debatable," we will not substitute our judgment for that of the administrative body] will be adhered to even if we were of the opinion that the administrative body came to a conclusion we probably would not have reached on the evidence. In the instant case, but for the rule, we might well have reached the conclusion [that the Board of Appeals erred], but in enforcing

the rule we are obliged to say that reasonable persons could have reached a different conclusion on the evidence so that the issues were fairly debatable, and hence, the decision of the Board must be sustained.' " 269 Md. at 184.

This statement is applicable here.

In sum, we think the circuit court applied the correct test and therefore reached the only permissible result in this case.

*Judgment affirmed; appellant to pay costs.*