## SALISBURY BOARD OF ZONING APPEALS, ET AL. *v.* BOUNDS, ET AL.

[No. 41, September Term, 1965.]

 

*Decided December 2, 1965.*

The cause was argued before HAMMOND, MARBURY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*Victor H. Laws, City Solicitor,* for appellants.

*Hamilton P. Fox,* with whom were *Hearne, Fox and Bailey* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

The matter to be determined in this case is whether appellees will be allowed a variance to permit the use of a house, located at the southeast corner of West William Street and Park Avenue in Salisbury, Maryland, to be used as a four family dwelling instead of a three family dwelling, the latter being permitted without the necessity of obtaining a variance. Under the Salisbury Zoning Ordinance, before making any structural changes in a building, a permit must be obtained from the city's building inspector. The applicable sections of the Zoning Code provide that the request for such a permit must be made on a form supplied by the building inspector and signed by the applicant or his agent. The building inspector is then to determine whether the proposed changes will conform to the city's Zoning Code. If the requirements of the Code are met the building inspector is authorized to issue the building permit. In the

instant case the appellees did not comply with the formal requirements of the Zoning Code, and as a result a series of misunderstandings ensued which resulted in four apartment units being built within the old house without the necessary building permit being issued. The appellees contend that the financial hardship which has resulted from these misunderstandings are the special circumstances upon which a variance should have been granted.

Edward G. Bounds and S. Norman Holland, Jr., appellees, in July or early August, 1964, purchased the subject property which contained some 8,500 square feet of land, and was improved by an old, three story, frame house which had been used as a single family dwelling. Prior to the purchase one of the appellees, Edward G. Bounds, together with Joseph B. Pettus, Jr., then building inspector for the city of Salisbury, visited the subject property in order to ascertain whether the house when converted into four, or possibly five, apartment units would comply with the density requirements of the Zoning Ordinance. The Salisbury Zoning Code requires a minimum of 2,500 square feet of land per family for a frame building in a residential C district in which the house is located. Measurements were made by Bounds and Pettus at this time on the incorrect assumption that the property extended to the curb line of the street instead of to the edge of the sidewalk nearest the house, which was the actual boundary. It is presently uncontroverted that even with the curb line being used as the boundary, the subject property would encompass something less than the 10,000 square feet required for four apartment units.

Thinking that the property contained "approximately 10,000 square feet," Pettus advised Bounds that five apartment units would not be allowed without a variance, but that four apartment units could be constructed by merely obtaining a building permit. Appellee Bounds advised the building inspector that he was going to Arkansas for a few days and told Pettus the name of his partner (co-appellee herein), the name of his attorney, and stated: "if you'll take care of it [obtaining a permit], I'll appreciate it." Pettus apparently agreed to make the necessary arrangements for the building permit, and did in fact issue a plumbing permit but he neglected to take any action with respect to the informally requested building permit.

When Bounds returned from his trip, he observed a building permit tacked to a tree on the property and he assumed, without examining, that it was the one he had requested Pettus to issue. Actually this permit was one granted some four years earlier which merely authorized a former owner to make minor repairs. Without further consultation with city officials, the appellees began making the structural changes necessary to convert the building into four apartment units. After eighty-five to ninety per cent of these changes had been made, the appellees discovered that they did not have a building permit. Appellees then made a formal application for the permit and the acting building inspector, Joe T. Hearn, issued a building permit on October 19, 1964, albeit authorizing only three apartment units. At this time the appellees had completed substantially one hundred per cent of the work on four apartment units.

When the acting building inspector refused to issue a building permit or a certificate of occupancy for the fourth family unit, Bounds and Holland applied to the Salisbury Board of Zoning Appeals to grant them a variance so as to allow the fourth apartment. The Board, after a hearing, refused to grant such a variance on the grounds that the applicants were responsible for obtaining a valid permit and had demonstrated no hardship other than financial, which was legally insufficient.

The appellees here then appealed the Board's decision to the Circuit Court for Wicomico County. In their order for appeal the appellees failed to set forth the error committed by the agency from which the appeal was taken and this information was not supplied within ten days, as allowed by Maryland Rule B2 e. The appellants here filed a timely motion to dismiss the appeal, setting forth the failure to specify the alleged error committed by the Board as the reason for the motion. Bounds and Holland then attempted, some forty days after filing their order for appeal, to correct the deficiency by filing a petition "in accordance with Rule B2 e" alleging numerous grounds for appeal. Rule B5. Dismissal of Appeal, states:

> "If the appellant shall fail to file his order for appeal within the time prescribed by Rule B4 (Time for Filing) or any order issued pursuant thereto, or shall

fail to file his petition within the time prescribed by section e of Rule B2 (How Appeal Taken), the court shall dismiss the appeal unless cause to the contrary be shown."

The motion to dismiss the appeal was argued before Judge Taylor on February 1, 1965. The appellees argued that the cause to the contrary shown for failing to state reasons why the Board should be reversed was that they did not have the transcript of the Board's proceedings until the date on which the motion to dismiss was filed. The trial court reserved ruling on the motion until after hearing the case on its merits. On March 1, 1965, Judge Taylor heard arguments of counsel as to the merits of the case. He then denied the motion to dismiss the appeal, and on March 4, 1965, issued an order reversing the decision of the Board of Zoning Appeals and ordering the director of the Bureau of Inspections to issue a building permit to the applicants (appellees herein), which as well had the effect of granting the variance for which application had been made. The trial judge did not set forth his reasons for denying the motion to dismiss or for the reversal of the Board, and none of the parties availed themselves of Rules 18 c and 564 b 2, which provide that the court upon motion of any party, seasonably made, shall prepare and file with the clerk a brief statement of the grounds for decision.

The Salisbury Board of Zoning Appeals and Henry P. Wojtanowski, Director of the Bureau of Inspections for the City of Salisbury, appealed to this Court contending (1) that the appellees' appeal to the trial court from the Board should have been dismissed for failure to comply with Rule B2 e, and (2) apart from procedural questions the trial court committed reversible error in reversing the decision of the Board.

As to the failure to comply with Rule B2 e and the resultant motion to dismiss pursuant to Rule B5, appellees (Bounds et al.) stressed the fact that the transcript of the testimony taken before the Board was not filed or otherwise made available to them until December 28, 1964, ten days after the deadline for filing their petition had passed. Appellees assert that this was "cause to the contrary" under Rule B5 for their failure to file a petition stating the reasons for the appeal in compliance with

Rule B2 e, but no Maryland case so holds and it is difficult to envision how such a contention could be sustained in view of the specific language of Rule B7 a, which indicates that the Board must file its record with the trial court *after* it receives an appellant's petition pursuant to Rule B2 e. The germane language of Rule B7 is:

> "Record.
> "a. *Time Within Which Required — Content.* Promptly after receipt of a copy of the first petition filed in a case pursuant to section e of Rule B2 (How Appeal Taken) and in any event within thirty days after such receipt, * * * the agency shall transmit to the clerk of the court the original or a certified copy of the record of its proceedings, including any transcript of testimony and any exhibit filed therein; * * *."

Since the above language clearly shows that the filing of the transcript shall follow, and not precede, the filing of the petition stating the reasons for the appeal, applicants below were not justified in waiting for the transcript before they ventured to state the reasons for their appeal and thus the appellees herein failed to show a cause to the contrary which would justify the lower court's refusal to dismiss the appeal for non-compliance with Rule B2 e.

It was suggested, in appellees' brief and in argument before us, that absent a showing of prejudice to the appellants caused by the late filing of the petition, it was within the discretion of the trial court whether to condone the late filing of the petition and hear the case on its merits or to dismiss the appeal. The short answer to this is that Rules B2 e and B5 do not require any showing of prejudice to the adverse party and Rule B5 plainly states that the trial court, in the absence of cause to the contrary, *shall* dismiss the appeal for non-compliance with Rule B2 e.

Even though we think it was reversible error for the trial court to deny the motion to dismiss the appeal, we think the trial court also erred in reversing the order of the Board denying the variance.

Under Section 49.3 of the Salisbury Zoning Code, in order

to authorize the variance applied for in this case, the Board was required to find that enforcement of the Code's population density provision would "* * * result in unwarranted hardship and injustice * * *" because of "* * * special conditions * * *." The only evidence before the Board as to hardship or injustice involving the property was the fact that repairs and alteration work had been substantially completed before an application for either a variance or a building permit had been made and that what had been done could not be undone without financial hardship to appellees. The appellants contend that a self-inflicted hardship such as was evident in this case can not be the basis for a variance. We agree. The general rule on this point is succinctly stated in 2 Rathkopf, *The Law of Zoning and Planning,* 48-1: .

"§ 1. Hardship Caused by Affirmative Acts of Commission.

"Where property, due to unique circumstances applicable to it, cannot reasonably be adopted to use in conformity with the restrictions of the zoning ordinance, hardship arises which is capable of being relieved through the grant of a variance. The restrictions of the ordinance, taken in conjunction with the unique circumstances affecting the property must be the proximate cause of the hardship. If the peculiar circumstances which render the property incapable of being used in accordance with the restrictions contained in the ordinance have been themselves caused or created by the property owner or his predecessor in title, the essential basis of a variance, i.e., that the hardship be caused *solely* through the manner of operation of the ordinance upon the particular property, is lacking. In such case, a variance will not be granted; the hardship, arising as a result of the act of the owner or his predecessor will be regarded as having been self-created, barring relief.

"This rule is simple and of general application in the several states.

"There is a uniform application of the rule in those cases in which there has been an act on the part of the

property owner or his predecessor which has physically
so affected the property as to create a unique circum-
stance or which in itself created either a practical dif-
ficulty or hardship in conforming to the restrictions
of the ordinance."

The instant case fits squarely within the above general rule.
The construction of the fourth apartment and the resultant hard-
ship could have been avoided if the appellees had used proper
diligence in ascertaining what the density requirements were for
a four apartment dwelling within the district in which this
property is located, and then made accurate measurements to
see if this particular property met the square footage require-
ments. The hardship here relied on was entirely self-created
and the Board properly refused to allow it to be used as a ful-
crum to lift, by way of a variance, the valid limitations imposed
by the Salisbury Zoning Code.

Aside from the fact that the hardship shown to the Board
was self-inflicted, it was also shown to be of a purely financial
nature, i.e., that the applicants' return on their investment would
be somewhat lower if the fourth apartment should remain un-
occupied. Here the appellees made no attempt to show that fur-
ther structural changes could not be reasonably made so that
all the space in the house could be utilized in three apartment
units, or that if the fourth apartment remained vacant the re-
turn on their investment would be other than reasonable. Un-
der these circumstances we think the Board would have been
correct in denying them the requested variance even if the hard-
ship upon which it was based had not been self-inflicted.

Much of the appellees' brief seems to suggest that the defi-
ciency in lot size as applied to the city's population density re-
quirement was really not material since there would be no in-
jury to the public, and as a consequence the Board would have
been justified in overlooking this comparatively slight devia-
tion. However, that administrative body was not empowered to
overlook the clear and unambiguous language of the Salisbury
Zoning Ordinances. The legislative body which enacted these
regulations can, of course, always make changes in them, but
until this is done the citizens of Salisbury are entitled to the

strict enforcement of the existing zoning ordinances. Since sufficient grounds for a variance were not shown, the Board correctly refused to deviate from the legislative determination of what the proper density requirements should be.

*Order reversed, costs to be paid by appellees.*