OPINION OF THE COURT
Ciparick, J.
Petitioner contends that the denial of a variance from Dobbs *539 Ferry’s "steep slope” ordinance, which prevents her from building a one-family dwelling on a parcel, constitutes a taking of property for which she is entitled to just compensation (see, US Const 5th Amend; NY Const, art I, § 7). We disagree and conclude that because petitioner acquired her property after the enactment of the steep-slope ordinance, its enforcement does not deprive her of any property interest.
In 1989, the Village enacted the steep-slope ordinance in an effort to "protect environmentally sensitive lands, preserve the Village’s natural resources and promote the orderly development of land * * * with excessively steep slope areas” (Dobbs Ferry Village Code § 300-35.D). To determine whether a lot is large enough to be developed, the ordinance requires a percentage reduction of the property’s gross area depending upon the degree of the property’s slope, which yields the buildable area. Applying the steep-slope ordinance to petitioner’s property, the buildable area is less than 4,200 square feet, well below the Zoning Code’s minimum buildable area of 5,000 square feet.
Petitioner sought to construct a one-family dwelling on the property and applied for a variance from the steep-slope ordinance. The Zoning Board of Appeals denied the variance, reasoning that petitioner "acquired the property over two years after the steep slope law came into effect and therefore had full knowledge that the lot was unbuildable and nonconforming.” The Board also found that granting a "variance would have a substantial detrimental impact upon the surrounding area and constitute a detriment to the health, safety and welfare of the neighborhood.” On petitioner’s subsequent CPLR article 78 proceeding, Supreme Court annulled the Board’s decision, holding that petitioner was entitled to a variance under the "single and separate ownership” theory. While the Board’s appeal was pending before the Appellate Division, this Court rendered its decision in Matter of Khan v Zoning Bd. of Appeals (87 NY2d 344), rejecting the "single and separate ownership” doctrine. The Appellate Division thereafter reversed the order of Supreme Court based solely on Khan and dismissed the petition, concluding that the Board’s denial of a variance was not arbitrary or capricious and was supported by substantial evidence.
On appeal to this Court, petitioner’s main argument is that the denial of a variance from the steep-slope ordinance works a taking of her property. Petitioner’s takings claim must fail because she never acquired an unfettered right to build on the *540 property free from the steep-slope ordinance. Petitioner purchased the property in 1991, two years after the steep-slope ordinance was enacted. This statutory restriction thus encumbered petitioner’s title from the outset of her ownership and its enforcement does not constitute a governmental taking of any property interest owned by her (accord, Soon Duck Kim v City of New York, 90 NY2d 1, 14 [decided today] [enforcement of preexisting statutory lateral-support obligation not a taking of a property interest]; Matter of Gazza v New York State Dept. of Envtl. Conservation, 89 NY2d 603, 615-616 [decided today] [enforcement of preexisting statutory wetlands restriction not a taking of a property interest]).
For the reasons fully elaborated in Kim (supra, at 7-8) and Gazza (supra, at 613-614), we are unpersuaded by the arguments in the dissenting opinion. Importantly, petitioner does not seek to invalidate the steep-slope ordinance as an improper exercise of the Village’s police power, but only challenges the ordinance as applied to her property (see, Gazza, supra, at 614; Vernon Park Realty v City of Mount Vernon, 307 NY 493, 500-501).
Moreover, we disagree with the dissent’s assertion that our holdings in these cases will impede the alienability of property. The rule that preexisting regulations inhere in a property owner’s title will affect the value of property, but this should furnish ample incentive to the prior owner — the party whose title has been redefined by the promulgation of a new regulation — to assert whatever compensatory takings claim it might have. If a prior owner, whether immediate or not, fails to assert a takings claim, it is this prior owner who might suffer the potential loss because the purchase price of the property will very likely reflect any restrictions inhering in title. Of course, the parties can condition sale on receipt of the necessary use allowances or prosecution of a takings claim. Any compensation received by a subsequent owner for enforcement of the very restriction that served to abate the purchase price would amount to a windfall, and a rule tolerating that situation would reward land speculation to the detriment of the public fisc. Additionally, the rule advanced by the dissent would have the effect of unsettling property law and other land-use restrictions throughout the State. The bright-line rule articulated in Kim and Gazza, which allows for a subsequent purchaser to challenge the validity of previously enacted laws (as opposed to pursuing a compensatory takings claim), will enhance certainty and, to that extent, facilitate transferability of title.
Furthermore, if property owners were permitted to assert compensatory takings claims based on enforcement of preexist *541 ing regulations, the traditional takings analysis articulated in Penn Cent., and its inquiry into "the extent to which the regulation has interfered with distinct investment-backed expectations,” would be rendered hopelessly circular (see, Penn Cent. Transp. Co. v New York City, 438 US 104, 124).[1] To illustrate based on the facts of this case: If petitioner’s title was defined without regard to the steep-slope restriction, then her investment-backed expectations would include the possibility of winning a compensatory takings lawsuit as a result of the Village’s enforcement of the ordinance. However, the success of her compensatory takings lawsuit would depend largely on the extent to which the ordinance interferes with her investment-backed expectations, which would in turn depend on the possible success of the compensatory takings claim, and so on. This inevitable circularity points up the analytical flaw in permitting a subsequent purchaser to assert a compensatory takings claim based on a property interest that has already been defined out of the owner’s title.[2]
Petitioner’s other arguments are unpreserved or without merit. Accordingly, the order of the Appellate Division should be affirmed, with costs.

. As the dissent notes, Justice Kennedy opined in Lucas that "[s]ome circularity must be tolerated in these matters,” but Justice Kennedy was discussing the impact of newly enacted regulations on a property owner’s investment-backed expectations, and not the separate issue of preexisting restrictions inhering in title (see, Lucas v South Carolina Coastal Council, 505 US 1003, 1034-1035 [Kennedy, J., concurring]). In this connection, Justice Kennedy observed that "[tjhe common law of nuisance is too narrow a confine for the exercise of regulatory power in a complex and interdependent society. * * * The State should not be prevented from enacting new regulatory initiatives in response to changing conditions * * *. The Takings Clause does not require a static body of state property law” (id., at 1035 [citation omitted]).

. The dissent’s arguments concerning the ability of an owner to separately transfer a compensatory takings claim to a successor-in-interest and the right of a decedent’s estate to assert such a claim are directed to issues not before us. As noted in Gazza (89 NY2d, at 614, n 4), we leave for another day the issues of transferability left open by these cases.