793 A.2d 545

**RICHARD ROESER PROFESSIONAL BUILDER, INC.**

v.

**ANNE ARUNDEL COUNTY, MD.**

No. 79, Sept.Term, 2001.

Court of Appeals of Maryland.

March 7, 2002.

Daniel J. Mellin (Hillman, Brown & Darrow, P.A., on brief), Annapolis, for petitioner.

Sarah M. Iliff, Senior Asst. County Atty. (Linda M. Schuett, County Atty., on brief), Annapolis, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

CATHELL, Judge.

Anne Arundel County, Maryland, respondent, appealed to the Court of Special Appeals from a judgment of the Circuit Court for Anne Arundel County. The Circuit Court had found that the Anne Arundel County Board of Appeals (hereinafter Board) had made an error of law and had also used an erroneous standard in respect to the Board's denial of a request for certain variances made by Richard Roeser Professional Builder, Inc., petitioner. The Court of Special Appeals reversed the judgment of the Circuit Court and directed the Circuit Court to reinstate the decision of the Board. Upon petitioner's request, we granted its Petition for Writ of Certiorari. *Roeser v. Anne Arundel County,* 366 Md. 246, 783 A.2d 221 (2001).

Petitioner presents three questions for our review:

"1. Did the Circuit Court correctly determine that the Anne Arundel County Board of Appeals' decision to deny critical area variances was based on the application of an erroneous legal standard which had been specifically over-ruled by the Court of Appeals, and was reversible error as a matter of law?

"2. Did the Circuit Court correctly determine that the Anne Arundel County Board of Appeals' finding of 'self-created hardship' was reversible error as a matter of law?

"3. Is the Court of Special Appeals' decision reversing the Circuit Court and ruling that acquisition of title to land knowing that a critical area's buffer variance will be applied for constitutes a 'self-created hardship' reversible error as a matter of law?"

We answer affirmatively to questions two and three. Accordingly, we shall reverse. We shall address question one only to affirm that the standards set out in *Belvoir Farms Home-owners Association v. North*, 355 Md. 259, 734 A.2d 227 (1999), and in *White v. North*, 356 Md. 31, 736 A.2d 1072 (1999), and reiterated and explained in *Mastandrea v. North*, 361 Md. 107, 760 A.2d 677 (2000), are the correct standards to apply upon remand to the Board.[1]

### Facts

Petitioner was the contract purchaser of two lots near Annapolis in Anne Arundel County. Only one lot is part of this appeal and part of the lot is located in the Critical Area "buffer" zone adjacent to wetlands.[2] At the time it contracted to purchase the property, petitioner knew that variances from the "Critical Area" and zoning provisions of Anne Arundel County would be required in order for it to be able to build a house of the size it desired. It applied for those variances and, as we have indicated, the Board denied its request.

In relevant part, the Board found:

---

1. The present case was heard by the Board and voted on prior to the filing of the first two of the above cited cases, but the written decision was rendered subsequently. It is not altogether clear what standard was actually used by the Board. We were informed at oral argument that the Board has since been applying the *Belvoir Farms/White* standard. We presume it will apply the appropriate standard upon remand. We do not have to determine which standard it actually used in this case as the case must be reheard in any event because of the Board's erroneous interpretation of "self-created hardship."

2. For explanations of "Critical Area," "buffer zones," etc., *see Belvoir Farms, White,* and *Mastandrea, supra.*

"The conditions surrounding the Petitioners' request for a variance have been self-created. The co-petitioner . . . purchased the subject property . . . on February 23, 1999. The wetlands existed on the property at that time. Indeed, it appears from the purchase price of the two lots ($62,000 total) that both seller and buyer were well aware of potential development issues with the land. The buyer apparently elected to purchase the property and now seeks to maximize the investment. Any applicant for a variance, however, must exercise proper diligence in ascertaining the setback requirements prior to the acquisition of property. If such diligence is not exercised, any resulting hardship to the property owner is regarded as self-created. *See, Wilson v. Elkton,* 35 Md.App. 417, 371 A.2d 443 (1977)." [3] [Some citations omitted.]

Judge Manck, of the Circuit Court for Anne Arundel County, in correctly rejecting the position of the Board, stated:

"[Little] deference, however, is appropriate when the agency's decision is predicated soley on an error of law. *White v. North,* 356 Md. 31, 736 A.2d 1072 (1999); *Washington National Arena Ltd. Partnership v. Controller [Comptroller],* 308 Md. 370, 519 A.2d 1277 (1987). . . .

---

**3.** It is a relatively common practice throughout the State, and has been so for decades, that buyers contract to buy properties with contingencies that make consummation of the contract conditioned on the granting of variances. So far as we have discovered, in cases involving "area" variances, this Court has never disapproved the practice. Additionally, in such instances in respect to "area" variances, we have never held that such a practice, by itself, constitutes a "self-created" hardship. In *Wilson, infra,* a predecessor in title to the current landowner modified a structure, which put the structure in violation of the existing zoning code. Therefore, the hardship was "self-created" by the applicant's predecessor in title. It was not created by the regulation. Likewise, in *Ad. + Soil, Inc. v. Queen Anne's County,* 307 Md. 307, 513 A.2d 893 (1986), the applicant had built into a setback, and, after the fact, sought a variance of the setback requirements. The issue of the effect of a purchase was not addressed in a variance context in either opinion, and both involved requests for "area" variances, not "use" variances.

We also note that in this country it is not considered inappropriate to "maximize" investments.

. . .

"Lastly, the Board found the need for the variances had been self-created; hence, pursuant to *Wilson v. Elkton,* 35 Md.App. 417, 371 A.2d 443 (1977) and *Ad + Soil, Inc. v. Queen Anne's County,* 307 Md. 307, 513 A.2d 893 (1986), the variances must fail.

"Taking the latter argument first, the Court is unconvinced that the hardship was self-created. Hardships of this type are normally those which are created by the owners of the property and not by the property itself. *Cromwell v. Ward,* 102 Md.App. 691, 651 A.2d 424 (1995); *Randolph Hills, Inc. v. Montgomery County Council,* 264 Md. 78, 285 A.2d 620 (1972); *Salisbury Board of Zoning Appeals v. Bounds,* 240 Md. 547, 214 A.2d 810 (1965); *Wilson v. Elkton,* 35 Md.App. 417, 371 A.2d 443 (1977). The topography and placement of the property is not a self-inflicted or self-created hardship and there is no evidence of testimony which would lend support to the Board's finding that in some fashion the Petitioner created this hardship.

"The Court is aware the scope of review 'is limited to whether a reasoning mind could have reached the factual conclusion the agency reached.' *Bulluck v. Pellham [Pelham] Woods Apartments,* 283 Md. 505, 390 A.2d 1119 (1974), and further, an agency's decision may not be upheld unless it is sustainable on the agency's actual findings and for reasons advanced by the agency in support of its decision. *United Steel Workers [Steelworkers] of America Local # 2610 v. Bethlehem Steel,* 298 Md. 665, 472 A.2d 62 (1984). In this case, the Board's decision as to the self-created hardship is not fairly debatable based on the evidence the Board had before it. The Court finds, therefore, the Board's action as to this finding was arbitrary and capricious and, more importantly, was an error of law."

The Court of Special Appeals, in reversing the Circuit Court, stated, as relevant here:

"In *Gleason v. Keswick Improvement Ass'n, Inc.,* 197 Md. 46, 78 A.2d 164 (1951), the Court of Appeals, citing CHARLES

A. Rathkopf, The Law of Zoning and Planning, § 23, at 262 (2d ed.1949), stated:

> Where a person purchases property with the intention to apply to the board of appeals for a variance from the restrictions imposed by the ordinance he cannot contend that such restrictions cause him such a peculiar hardship that entitles him to the special privileges which he seeks." [4]

## Discussion

*Gleason v. Keswick Improvement Association,* 197 Md. 46, 78 A.2d 164 (1951), was not an application for an "area" variance. The request was designed to permit commercial use (a grocery store) in a residentially zoned area; accordingly, it concerned "uses," not "area." Indeed, it was not really an application for a "use" variance either. It was sought under a peculiar Baltimore statutory provision providing that a person desiring to use his property contrary to the uses permitted as of right in a particular district could apply for the particular other use if "within one hundred feet of a boundary line between two use districts, any use permitted in that one of such use districts which has the lower classification, provided such one hundred foot measurement shall not extend across a street." *Id.* at 50, 78 A.2d at 165.[5] In other words, it was an alternate classification possibility, built into the statute itself,

---

**4.** The position taken by Anne Arundel County does not indicate what would happen if a property was conveyed by testamentary devise, or by operation of law. This points out another problem with the concept. Such a new owner would, apparently, not be subject to the self-created hardship rule if he or she obtained property by devise after the regulation was enacted. Under the County's theory, the Board would have to determine and distinguish between matters of title, *i.e.,* how an owner acquired title. Such matters are not within a board's areas of expertise. Zoning regulations regulate the land, impact the land—not ownership, and not title. For further comment on this issue, see the discussion, *infra,* from *Palazzolo v. Rhode Island,* 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001).

**5.** Ordinarily, a "variance" is couched in terms of "variances" from the provisions of the ordinance, and generally do not involve reclassifications or alternate classifications of property use.

for property within certain distances of certain district boundaries. In essence, we treated it as a reclassification and in later cases made that distinction. In *Gleason*, we noted that the applicants had, in the five or six years since their purchase, been using the structure as a dwelling unit. We further opined that since they had purchased the property, the applicants had

> "allowed the residence to deteriorate, and the only repairs made to the house were made by the tenants themselves.... They claim that in view of the properties surrounding this lot, and that it is not fit for residential purposes, it would be a hardship not to grant them an exception to the general rule.... We think it a fair inference that the appellants *bought this property with the intention to change its classification* so as to permit its use as a store, and they cannot claim now that they suffer a peculiar hardship that entitles them to the special privilege which they seek."

*Id.* at 50–51, 78 A.2d at 166 (emphasis added). In other words, we were asserting that the hardship that existed when the property was purchased was not a reason to reclassify (rezone) the specific property. The issue was not treated as a variance application, in spite of our reference to Rathkopf's *The Law of Zoning and Planning* (a reference that Rathkopf has since largely disowned, *see infra* at pages 302–05).

Shortly afterwards, in a case in which we upheld the Board's denial of an "exception," we explained what we thought we had done in *Gleason:*

> "On the facts the instant case is the converse of *Gleason v. Keswick Imp. Ass'n*, 197 Md. 46, 78 A.2d 164. In that case the property in question had originally been zoned, reasonably we held, as residential, in accordance with actual use. It is still so used, and we set aside an order of the Board in effect re-zoning it as commercial. In that case time had confirmed the reasonableness of the original zoning, instead of demonstrating the contrary or a contrary change."

*Hoffman v. City of Baltimore,* 197 Md. 294, 308, 79 A.2d 367, 373 (1951). The language in *Hoffman,* describing what we had done in *Gleason,* was classic change/mistake language usually associated with Euclidian reclassifications, not variances.

In *City of Baltimore v. Weinberg,* 204 Md. 257, 103 A.2d 567 (1954), a case involving a denial of a non-conforming use status, we continued to treat *Gleason* as a re-classification case rather than a variance (we had never treated it as a variance) and emphasized that the owners in *Gleason* had permitted dwelling structures on their property to deteriorate and thus were, in that fashion, creating a situation where residential use was a hardship. We said in *Weinberg:* "The appellants also rely on *Gleason v. Keswick Improvement Association,* 197 Md. 46, 50, 51, 78 A.2d 164, where this Court held that because the residence in question had been allowed to deteriorate, it was evident that the residence was bought with a view to changing its [zoning] classification." *Id.* at 263–64, 103 A.2d at 569.

In any event, ultimately, we have distinguished, if not overruled, *Gleason.* In *Zengerle v. Board of County Commissioners for Frederick County,* 262 Md. 1, 276 A.2d 646 (1971), we noted that Frederick County bought the farm for the purpose of building and operating a landfill. It was known to the County at the time it purchased the property that in order to operate a landfill, the County would need to obtain substantial setback variances (area variances). The opinion we adopted distinguished the *Gleason* case, making its ruling, at the least, inapplicable to area variance cases. We referred to the trial judge's opinion, and said: "[W]e shall adopt his opinion as follows...." *Id.* at 3, 276 A.2d at 648. The opinion we adopted as our own distinguished the *Gleason* case, making its ruling inapplicable to area variance cases. Through the trial judge's opinion, we held:

"Appellants make the further contention that where one purchases realty intending to apply for a variance from zoning restrictions, he cannot contend that such restrictions cause him the undue hardships that would entitle him to

such variance, citing *Gleason v. Keswick Improvement Association,* 197 Md. 46, 78 A.2d 164. This same rule has been relaxed where there has been an application for area variance such as here, as distinguished from a use variance as in *Keswick,* the Court of Appeals pointing out that a use variance is customarily concerned with unusual hardship where the land cannot yield a reasonable return without a variance whereas an area variance is primarily concerned with practical difficulties. *Loyola Federal Savings & Loan Assoc. v. Buschman,* 227 Md. 243, 176 A.2d 355.

"Section 40–145 permits a variance where practical difficulty or unnecessary hardship is present. Since this is an application for an area variance and since there was testimony of practical difficulty in the absence of the grant of a variance, the rule announced in *Keswick* does not apply.

"Moreover, in *Stacy v. Montgomery County,* 239 Md. 189, 210 A.2d 540, an area variance was approved by the Court of Appeals where a party had purchased a property intending to apply for a special exception. The need for an area variance was not determined until after the special exception had been granted. That is substantially what happened in the present case and *Stacy* is further authority for holding that the rule in *Keswick* does not here apply."

*Id.* at 21–22, 276 A.2d at 656.

As important, is the fact that Rathkopf, *The Law of Zoning and Planning,* upon which we spoke in *Gleason,* and in turn the Court of Special Appeals relied on in the case at bar, has abandoned the position upon which the Court of Special Appeals relied. The Supreme Judicial Court of Maine noted the change in its relatively recent case of *Twigg v. Town of Kennebunk,* 662 A.2d 914, 916 (Me.1995), saying:

"The Board ruled there was self-created hardship because 'the applicant knew, prior to his purchase, of the complications and prohibitions attached to this property and its use....' The Board's conclusion that knowledge of zoning restrictions prior to the purchase of property is tantamount to self-created hardship is an error of law. While it was the

general rule at one time 'that one who purchases property with actual or constructive knowledge of the restrictions of a zoning ordinance was barred from securing a variance,' the rule has since been 'altogether abandoned or modified into nonexistence' in most jurisdictions. n3 3 Rathkopf, *The Law of Zoning and Planning* § 38.06(2) (1988). . . . The modern rule provides that a purchase with knowledge does not preclude the granting of a variance and, at most, is considered a nondeterminative factor in consideration of a variance. Rathkopf at § 38.06." [Some citations omitted.]

Rathkopf, now provides:

"While this rule may still be applicable in a few jurisdictions, it has been altogether abandoned, or modified into nonexistence, in others. Two basic faults in the old rule have been recognized, and these faults are the reasons behind its demise. First, since hardship can neither be measured by the cost of the property to the owner nor by the difference between the value the land has as restricted and the value it would have if the variance were granted, there is no danger that a knowledgeable purchaser could create evidence of hardship by paying an excessive price for property that is restricted. Second, the old rule failed to acknowledge that if the prior owner would have been entitled to a variance at the time of the zoning ordinance restriction was enacted, the right is not lost to a purchaser simply because he bought with knowledge of the regulation. *In other words, because a purchaser of property acquires no greater right to a variance than his predecessor, he should not be held to acquire less.*

"The 'current trend' in the rule, that purchase with knowledge of restrictions either does not prohibit the granting of a variance, or is at most a nondeterminative factor to consider in the granting of variance, has had proponents at least as early as 1957 when the Supreme Court of Rhode Island rejected the notion that purchase with knowledge of restrictions, in itself, constituted self-created hardship. The 'traditional rule,' has been relaxed to leave the decision of whether a purchaser with knowledge of restrictions should

receive a variance up to the discretion of the board of appeals.

"It should not be within the discretion of a board of appeals to deny a variance solely because a purchaser bought with knowledge of zoning restrictions. . . .

"The evolution and development of the rule took two slightly different paths. Originally, purchase with knowledge of restriction had its greatest application where a use variance was sought. When the rule was being modified so as to be less harsh, nonuse variances were first to be granted even when there was knowledge."

Arden H. Rathkopf & Daren A. Rathkopf, *The Law of Zoning and Planning* § 58.22, 141–48 (Edward H. Ziegler, Jr. revision, vol. 3, West 1991) (emphasis added) (footnotes omitted).

Robert M. Anderson, in his *American Law of Zoning* § 20.44, 566 (Kenneth H. Young revisions, 4th ed., CBC 1996), discusses the application of the rule in New Jersey, saying:

"Although a number of earlier cases . . . repeated a more restrictive rule, the more recent decisions seem clearly to say that the right to a variance is not affected by a sale of land. One decision . . . said the following: 'The hardship criteria of (c) are expressly stated in terms of the objective physical characteristics of the property itself. The hardship thus entailed is not ordinarily mitigated by mere transfer of title to property. . . . *Where an original owner would be entitled to a variance under a specific set of facts, any successor in title is ordinarily also entitled to such a variance, providing that no owner in the chain of title since the adoption of the zoning restriction has done anything to create the condition for which relief by variance is sought.*

"The Supreme Court of New Jersey has applied the same rule to the granting of variances for 'special reasons.' It said: 'We wish to make it clear that if a prior owner would be entitled to such relief, that right is not lost to a purchaser simply because he bought with knowledge of the zoning regulation involved. . . .'" [Emphasis added.] [Footnotes omitted.]

Anderson then describes, favorably, the position of Delaware courts:

"A Delaware court described the diverse views and elected the more permissive one, explaining: 'We are inclined to regard the property itself as a permanent entity *and the current ownership merely as a passing phase.* We hesitate to lay down a rule that Darling's property, by his purchase of it, became positively ineligible for a variance . . . .'

". . . Courts which permit relief, but also permit the board of adjustment to consider the fact of self-created hardship, fix their attention on the fact that hardship must relate to the property itself, and they see little relevance in a change of ownership."

*Id.* at 568–69 (emphasis added) (footnotes omitted). Julian Conrad Juergensmeyer and Thomas E. Roberts, *Land Use Planning and Control Law* § 5.17, 211 (West 1998), state:

"When one purchases property and then applies for a variance on the grounds of unnecessary hardship, a difference of opinion exists as to whether the variance should be denied on the ground of self-induced hardship. Most courts consider the transfer of title irrelevant, but some cases contain contrary suggestions . . . . *However, since ownership is normally irrelevant to zoning, the transfer of title ought not affect the issue. If the land suffers the requisite hardship, in that the owner can make no reasonable return from its use as zoned, then the board ought to grant a variance. If not, the land becomes permanently zoned in a useless state.*

"*The reasons used to deny a variance to one who violates the law and then seeks relief are not applicable to one who purchases with knowledge. In the former, the owner created the hardship; in the latter, the zoning created the hardship, which pre-existed the purchaser's acquisition of title. . . .* [B]ut it is not an affront to the law to grant relief to one who purchases land where unique circumstances have already zoned the land into a state of uselessness.

" . . . A windfall may result, but it is not an unjustifiable one vis-s-vis the public, since the situation assumes that land deserves the variance. It is simply a question of which owner gets the variance, the prior owner or the new owner." [Emphasis added.] [Footnotes omitted.]

Daniel R. Mandelker, *Land Use Law* § 6.50, 259–60 (4th ed., Lexis 1997), as to this issue, states:

"A more complicated problem is presented when self-created hardship is claimed because the land owner purchased a lot with knowledge of the zoning restrictions. The rule that hardship is self-created in this situation stems from early New York cases and is followed in some states. . . .

"The present status of the New York rule is in doubt. The New York courts adopted the rule in use variance cases in which there were other reasons for denying the variance. In the area variance cases they hold that self-created hardship based on purchase with knowledge of existing zoning is only one factor to consider.

"The cases that reject the rule that purchase with knowledge of existing zoning in self-created hardship are correct. The rule is fair in cases where a prior owner created a hardship through some action relating to the land. Purchase should not relieve a subsequent owner of this infirmity. To hold that mere purchase with knowledge of existing zoning is self-created hardship improperly makes the purchase of land a basis for denying a variance." [Footnotes omitted.]

Several jurisdictions have held similarly to both our cases distinguishing *Gleason* in respect to area variances, and the Maine court's overruling of the prior position taken by Rathkopf, and Rathkopf's disavowal of his previous position. They include Minnesota, where the Court of Appeals of Minnesota in *Myron v. City of Plymouth,* 562 N.W.2d 21 (Minn.App. 1997), first noted that the property owner had been denied his request for a variance because the city found that the "appellant was aware at the time he purchased the property that a

variance would be necessary to make the property buildable."
*Id.* at 22. The intermediate appellate court then held:

"In short, these cases have interpreted the phrase 'created by the landowner,' . . . to include circumstances in which a landowner purchased property with knowledge (actual or constructive) that the property was subject to a zoning ordinance restricting development.

"The problem with such a reading of the statute is that—by backspin—it places an unreasonable limitation on the power of cities to grant variances, for although the statute provides authority to grant variances when certain prerequisites are met, it also creates a mirror image limitation on the authority to grant a variance whenever the stated prerequisites are not met. One of those prerequisites is that the need for the variance not be 'created by the landowner.' If that includes mere purchase with knowledge, a [city] would, in effect, be prohibited from granting a variance to every subsequent owner who purchased with knowledge that a variance would be required for development.

. . .

"*More significantly, such a reading is also inconsistent with the general property-law goal to preserve alienability. An owner who did not self-create a hardship is eligible for a variance. But that owner would, in effect, be barred from selling to someone else without, as a consequence of the sale, destroying the eligibility to receive a variance. We see no reason why an owner who sells should not be able to convey to a buyer the eligibility for a variance along with the land itself.*

"We therefore hold that actual or constructive knowledge of a zoning ordinance before a purchase of land is not a bar to granting a variance. We overrule *Hedlund [v. City of Maplewood,* 366 N.W.2d 624] and its progeny to the extent that they conflict with our holding."

*Id.* at 23 (emphasis added).

The Court of Appeals of Indiana first noted the issue in *Reinking v. Metropolitan Board of Zoning Appeals of Marion*

*County,* 671 N.E.2d 137, 139 (Ind.App.1996), as: "Whether knowledge of a restrictive zoning ordinance prior to the acquisition of property waives the right to argue undue hardship...." The court opined:

"The dwelling district ordinance in question was adopted in 1989, after the construction of I–465. Uncontested testimony in the record supports the fact that the Reinkings purchased lot 244 after 1989. After purchasing the property from a tax sale buyer, the Reinkings petitioned the MBZA for a variance of developmental standards....

. . .

"We next determine whether knowledge of a restrictive zoning ordinance prior to the acquisition of property is sufficient grounds to bar [a] variance petition.... The MBZA argues that the purchase of property which does not meet zoning specifications is a self-imposed burden.... However, where an unnecessary hardship is shown to exist based upon the terms of an ordinance, as they apply to the land, the ability to claim hardship is available to subsequent purchasers as well as to the original owner.

"... [S]ubsequent decisions have made it clear that the purchase of property with knowledge of use restrictions does not prohibit a purchaser from claiming a special or unnecessary hardship, regardless of who owned the property at the time it was burdened.... Whether they met their burden of proving an undue hardship is yet another issue."

*Id.* at 139–42 (footnotes omitted) (some citations omitted).

In the New Jersey case of *Somol v. Board of Adjustment of the Borough of Morris Plains,* 277 N.J.Super. 220, 231, 649 A.2d 422, 428 (Law Div.1994), the court noted: "The Board's finding that plaintiff showed no undue hardship, in part, was based on the constructive knowledge of the plaintiff's family that the lot was nonconforming at the time of purchase back in 1963...." The court held:

"The law is clear that if an owner who is entitled to a lot size variance on hardship grounds sells to a buyer who has knowledge of the non-conformity, the right to a variance is

not lost as a result of the buyer's knowledge. However, if a prior owner created the hardship, the purchaser ... would not be entitled to a variance on the basis that the hardship was self-imposed. An examination of the chain of title and the record shows that the lot was zoned into a substandard condition and that the hardship alleged, notwithstanding the constructive knowledge of the substandard condition, is not self imposed by any action of the plaintiff or predecessor in title."

*Id.* at 232, 649 A.2d at 428 (citations omitted); *see Huebner v. Waukesha County Zoning Board of Adjustment,* 180 Wis.2d 469, 514 N.W.2d 54 (1993) ("Here, Steiner was not engaged in any reckless conduct or unauthorized activity. He merely purchased an existing nonconforming building. We have recognized that a purchaser should not be precluded from securing a variance in such a situation. ' "A purchaser of property acquires no greater right to a variance than his predecessor and he should not be held to acquire less." ' *Id.* (quoting 3 RATHKOPF, THE LAW OF ZONING AND PLANNING § 39.022, at 39–16 (1987))."); *see also In re Gregor,* 156 Pa.Commw. 418, 426, 627 A.2d 308, 312 (1993) ("The right to develop a nonconforming lot is not personal to the owner of property at the time of enactment of the zoning ordinance but runs with the land, and a purchaser's knowledge of zoning restrictions alone is insufficient to preclude the grant of a variance unless the purchase itself gives rise to the hardship.")

Even in those jurisdictions that still, to a degree, adhere to the older Rathkopf standard, more often than not the standard has been greatly relaxed where area, as opposed to use, variances are at issue. The Court of Special Appeals in a case in which it reversed the granting of a variance, described the differences between "area" variances and "use" variances, as:

" '[A]rea variance' (a variance from area, height, density, setback, or sideline restrictions, such as a variance from the distance required between buildings) and not a 'use variance' (a variance which permits a use other than that permitted in the particular district by the ordinance, such as

a variance for an office or commercial use in a zone restricted to residential uses)."

*Anderson v. Board of Appeals,* 22 Md.App. 28, 37–38, 322 A.2d 220, 225–26 (1974).[6]

Subsequent to *Zengerle v. Board of County Commissioners for Frederick County,* 262 Md. 1, 276 A.2d 646 (1971), we reiterated its holding in *McLean v. Soley,* 270 Md. 208, 215, 310 A.2d 783, 787 (1973), where we also distinguished between area and use variances, saying:

"It is also contended by McLean that Soley is precluded from asserting 'practical difficulty' because he was charged with knowledge of the sideyard requirements when he purchased this property. We see no merit in this argument. We noted in *Zengerle v. Bd. of Co. Comm'rs,* 262 Md. 1, 21, 276 A.2d 646 (1971), citing *Loyola, supra,* that this 'rule' is more strictly applied in 'use variance' cases than in cases of 'area variances,' such as the one at bar."

There has also been a federal "takings" case, *Palazzolo v. Rhode Island,* 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001), that in a taking context addresses the effect of purchase of property with knowledge of restrictions, doing so with language that may well be relevant to the issue now before this Court. The land use treatise writers had assumed "tak-

---

**6.** E.C. Yokley, *Zoning Law and Practice* § 21–6, 321 (vol. 3, 4th ed., Michie 1979), describes the difference between "use" and "area" variances as:

"A use variance is one that permits a use other than that prescribed by the zoning ordinance in a particular district. An area variance has no relationship to a change of use. It is primarily a grant to erect, alter, or use a structure for a permitted use in a manner other than that prescribed by the restrictions of a zoning ordinance." Anderson's *American Law of Zoning, supra,* at § 20.48, 578, distinguishes the two, as:

"A use variance authorizes a use of land which otherwise is proscribed by the zoning regulations. An area variance authorizes deviation from restrictions upon the construction and placement of buildings and structures which are employed to house or otherwise serve permitted uses.... More specifically, area variances include those relating to setback, yard, lot-area, lot-coverage, floor-area, frontage, height, and similar restrictions. [Footnote omitted.]

ings" cases, where the issue of compensation was involved, would be subject to the harsher rule, that a purchaser who takes property with environmental restrictions could not then challenge the restrictions. Juergensmeyer, when putting forward the less harsh rule for variances, notes:

"A different question is presented when one who purchases with knowledge of an existing restriction seeks to recover just compensation on the basis that the zoning restriction effects a taking under the Fifth Amendment. In such a case, courts may treat the personal right to compensation as waived. Thus, a board may grant a variance under state law to permit land to be used according to traditional zoning principles, but if the board denies the variance the courts might not allow an action for compensation. Under variance law, the land is the focus; under constitutional law, the person is."

Julian Conrad Juergensmeyer & Thomas E. Roberts, *Land Use Planning and Control Law* § 5.17, 212 (West 1998) (footnotes omitted). Juergensmeyer's speculation, with the decision in *Palazzolo* has, apparently, been rejected.

Before addressing *Palazzolo,* and in order to "set the stage" in which the *Palazzolo* opinion becomes most relevant to the instant case, we note that with the advent of the use of the term "investment-backed expectations," there was some concern expressed in the land use community as to whether when a purchaser obtained title to property already subject to environmental restrictions, he could not have "expected" to be able to use the property free of the restrictions. Accordingly, it was thought that some courts might hold that such a purchaser could not assert "taking" claims, even if the restrictions denied him all viable economic use.[7]

---

7. Dale R. Cathell, *Some Thoughts on Investment Backed Expectations— Sword or Petard?* (MICPEL 1994 modified 1998). Addressing Justice Brennan's dissent in *Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), the writer remarked:
"What he states is this: If one expects governmental authorities, via the permitting process, to extort from [him] one of the incidents of real property ownership, he does not expect to retain that which is

The Supreme Court has now answered the questions raised. Palazzolo became the owner of property by conveyances that occurred after the environmental law at issue was passed. It was argued that because he took title subsequent to the statutory enactment, he could not assert "takings" claims in respect to the statute's effect upon his property. The Supreme Court of Rhode Island agreed with the State in *Palazzolo v. State*, 746 A.2d 707, 716 (R.I.2000), applying one of its cases that had adopted the "investment-backed expectations" theory, saying:

"Under his [Palazzolo's] reasoning, if a regulation deprives an owner of all beneficial use, it is immaterial whether the regulation predates the claimant's ownership of the land.

extorted, thus he has no expectation of having it in the first instance. Thus, under Justice Brennan's theory of investment-backed expectations there is no taking....

. . .

"Thus, according to the dissent, if one is aware of a regulation which incorporates an unconstitutional taking scheme, he could not possibly have expected to be permitted to do that [which] the 'taking' takes and thus there is no interference with an investment-backed expectation upon which to base an unconstitutional taking."

The writer warned that some authorities would accept the reasoning of Justice Brennan's dissent.

Thereafter, in the "taking" context, in *Anello v. Zoning Board of Appeals*, 89 N.Y.2d 535, 678 N.E.2d 870, 656 N.Y.S.2d 184 (1997), the New York court held that a property owner who acquired property after the passage of a "steep-slope" ordinance was not deprived of an interest in the property because:

. "[I]f property owners were permitted to assert compensatory takings claims based on enforcement of preexisting regulations, the traditional takings analysis ... and its inquiry into 'the extent to which the regulation has interfered with distinct investment-backed expectations,' would be rendered hopelessly circular."

*Id.* at 540–41, 678 N.E.2d at 871, 656 N.Y.S.2d at 185.

Additionally, in *Basile v. Town of Southampton*, 89 N.Y.2d 974, 976, 678 N.E.2d 489, 491, 655 N.Y.S.2d 877, 879 (1997), that court stated: "Since claimant took title to her property subject to ... regulations ... she cannot claim the value of the property without such restrictions." But, the New Jersey courts went the other way in *East Cape May Associates v. State of New Jersey*, A–4852–95T5, 300 N.J.Super. 325, 693 A.2d 114 (App.Div.1997), where that court held that successive owners have all the rights of their predecessors in title. The dispute, at least in taking issues, has been resolved by the Supreme Court in *Palazzolo, supra*.

However, Palazzolo was unable to cite a single case in which a court has ordered compensation for a regulatory taking when the claimant became the owner of the property after the regulation became effective.... Here, when Palazzolo became the owner of this land in 1978, state laws and regulations already substantially limited his right to fill wetlands. Hence, the right to fill wetlands was not part of the title he acquired."

The United States Supreme Court rejected the position, and the reasoning of the Rhode Island court.

"The theory underlying the argument that post-enactment purchasers cannot challenge a regulation under the Takings Clause seems to run on these lines: Property rights are created by the State. So, the argument goes, by prospective legislation the State can shape and define property rights and reasonable investment-backed expectations, and subsequent owners cannot claim any injury from lost value. After all, they purchased or took title with notice of the limitation.

"The State may not put so potent a Hobbesian stick into the Lockean bundle. The right to improve property, of course, is subject to the reasonable exercise of state authority, including the enforcement of valid zoning and land-use restrictions. .... Were we to accept the State's rule, the post enactment transfer of title would absolve the State of its obligation to defend any action restricting land use, no matter how extreme or unreasonable....

"Nor does the justification of notice take into account the effect on owners at the time of the enactment, who are prejudiced as well. Should an owner attempt to challenge a new regulation, but not survive the process of ripening his or her claim (which, as this case demonstrates, will often take years), under the proposed rule the right to compensation may not b[e] asserted by an heir or successor, and so may not be asserted at all. The State's rule would work a critical alteration to the nature of property, as the newly regulated landowner is stripped of the ability to transfer the interest which was possessed prior to the regulation. The

State may not by this means secure a windfall for itself.... The proposed rule is, furthermore, capricious in effect. The young owner contrasted with the older owner, the owner with the resources to hold contrasted with the owner with the need to sell, would be in different positions....

. . .

"There is controlling precedent for our conclusion. *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).... The principal dissenting opinion observed ... the Nollans ... were 'on notice that new developments would be approved only if provisions were made for lateral beach access.' A majority of the Court rejected the proposition. 'So long as the Commission could not have deprived the prior owners of the easement without compensating them,' the Court reasoned, 'the prior owners must be understood to have transferred their full property rights in conveying the lot.' "

*Palazzolo,* 533 U.S. at 625 – 630, 121 S.Ct. at 2462–64, 150 L.Ed.2d at 613–14 (some citations omitted).

The types of hardships that are normally considered to be self-created in cases of this type do not arise from purchase, but from those actions of the landowner, himself or herself, that create the hardship, rather than the hardship impact, if any, of the zoning ordinance on the property. Our courts have spoken to these types of actions on several occasions. Relatively recently in *Ad + Soil, Inc. v. County Commissioners of Queen Anne's County,* 307 Md. 307, 316, 513 A.2d 893, 897–98 (1986), the Board found that " 'The only extraordinary circumstances which would seem to exist in this case are self inflicted and a result of [Ad + Soil's] construction of the facilities on the site without conforming to the Ordinance's required setbacks.' " (Alteration in original.) We concurred that such a "hardship" was self-imposed.

In *Salisbury Board of Zoning Appeals v. Bounds,* 240 Md. 547, 214 A.2d 810 (1965), an earlier, but seminal case, a property owner had constructed a building without a valid building permit (although he thought a valid permit existed).

The building was in violation of the zoning code. After it was discovered, the property owner, much as *Ad + Soil* would do twenty-one years later, sought a variance to legalize what he had already done. The Board declined to grant the variance on the grounds that it was Bounds' responsibility to obtain a valid permit, and thus the resulting hardship resulted from his failures. The trial court reversed the Board's denial of the variance,[8] and we held that in doing so the trial court erred. We cited to Rathkopf's *The Law of Zoning and Planning* in reversing the trial court:

" ' § 1. Hardship Caused by Affirmative Acts of Commission.

'Where property, due to unique circumstances applicable to it, cannot reasonably be adopted to use in conformity with the restrictions of the zoning ordinance, hardship arises which is capable of being relieved through the grant of a variance. . . . If the peculiar circumstances which render the property incapable of being used in accordance with the restrictions contained in the ordinance have been themselves caused or created by the property owner *or his predecessor in title,*[9] the essential basis of a variance, i.e., that the hardship be caused *solely* through the manner of operation of the ordinance upon the particular property, is lacking. In such case, a variance will not be granted. . . .

. . .

'There is a uniform application of the rule in those cases in which there has been an act on the part of the property owner or his predecessor which has physically so affected the property as to create a unique circumstance or which in itself created either a practical difficulty or hardship in conforming to the restrictions of the ordinance.' "

---

8. There was an issue of appealability also raised in *Bounds*. As it is not relevant to the case *sub judice,* we do not address that issue.

9. If mere purchase was sufficient by itself to create a hardship, our citation to Rathkopf, with its distinction that hardships can be self-created by a predecessor in title, would be of little importance.

*Id.* at 554–55, 214 A.2d at 814 (some emphasis added). We then held that the *Bounds* case "fits squarely within the above general rule." *Id.* at 555, 214 A.2d at 814. As can be seen, the self-created hardship in *Bounds* was the actual structural modification of a building by the current owner that put the building into violation of the ordinance. In other words, it was the owner's act of commission that created the claimed hardship.

In *Randolph Hills, Inc. v. Montgomery County Council,* 264 Md. 78, 285 A.2d 620 (1972), the property owner subdivided a much larger tract of land into lots. In the process, the owner left one parcel in a character where, according to the owner, it had no reasonable or beneficial use in its then classification. The owner then sought to have the parcel reclassified, asserting that it was a hardship for the parcel to remain in its present classification. Although it was a reclassification case, and not a variance case, we applied the same act of commission principle. We noted that the trial court had found:

> "*For engineering reasons, economic reasons, or for some other reason the applicant, in laying out the subdivision, left as an outlot the particular ground which is the subject of this rezoning application.*
>
> . . .
>
> "*Its use for R–60 residences is precluded at this time because the applicant chose to lay out its subdivision in the particular manner that it did.*
>
> "*. . . What is important is that the use of the particular ground in question is restricted because the applicant chose to develop as it did.*"
>
> . . .
>
> "The applicant has said, in effect, that although it was entitled to use this ground in question under the zoning code for R–60 development *it chose not to do so, it now wants the County to permit the use of this land for some other purpose.*"

*Id.* at 81–82, 285 A.2d at 621–22. We then agreed with the trial court, noting favorably its reliance on the *Bounds* case, *supra.*

In *Evans v. Shore Communications,* 112 Md.App. 284, 309, 685 A.2d 454, 466 (1996), the Court of Special Appeals agreed with the "Board" that "[t]he needs of SCI's customers have nothing to do with the peculiarity of the property in question. Thus, any hardship claimed by SCI—the second prong of the test—is self-inflicted, and thus not a ground for a variance." The hardship complained of in the Court of Special Appeals' case of *Cromwell v. Ward,* 102 Md.App. 691, 651 A.2d 424 (1995), was also self-created. The current property owner erected a structure that exceeded the height limitation on structures in Baltimore County. The court held that the activity of the owner had been self-imposed.[10] Similarly, in *Wilson v. Mayor and Commissioners of the Town of Elkton,* 35 Md.App. 417, 371 A.2d 443 (1977), the Court of Special Appeals found a self-created hardship where an owner, albeit a predecessor owner, had illegally transformed a two-unit non-conforming apartment building into a three-unit non-conforming apartment building, and her successor owner was attempting to obtain a variance from set-back requirements to permit an exterior fire escape, necessitated by the change in the number of units, to be built in a required side yard. That court noted: "The finding of the Board of Appeals that the circumstances requiring the variance are not the result of actions on the applicant's part must be read to mean the applicant, or his predecessor. When so read, the finding is directly contrary to the evidence, and must be rejected." *Id.* at 428, 371 A.2d at 449.

This typical type of self-created hardship (an act of commission by the owner) is also the law in other jurisdictions. *Martin v. Board of Adjustment,* 464 So.2d 123 (Ala.Civ.App.

---

**10.** The Court of Special Appeals opined further: "Were we to hold that self-inflicted hardships in and of themselves justified variances, we would, effectively not only generate a plethora of such hardships but we would also emasculate zoning ordinances." *Cromwell,* 102 Md.App. at 722, 651 A.2d at 439–40.

1985) (illegally building a carport in a setback, pursuant to a permit application that stated the carport would not be in the setback deemed self-imposed); *Board of Zoning Appeals v. Kempf,* 656 N.E.2d 1201 (Ind.App.1995) (the paving over of a required green space deemed to be self-created); *CDK Restaurant, Inc. v. Krucklin,* 118 A.D.2d 851, 500 N.Y.S.2d 339 (1986) (the illegal enclosure around a walkway was deemed self-inflicted); *Midgett v. Schermerhorn,* 24 A.D.2d 572, 262 N.Y.S.2d 269 (1965) (disregard of conditions imposed on prior grant of a variance held to be self-imposed); *Pittsburgh v. Zoning Board of Adjustment,* 522 Pa. 44, 559 A.2d 896 (1989) (reliance on city permits that had been obtained on false information in permit applications held to be self-created hardship); *In re Cumberland Farms,* 151 Vt. 59, 557 A.2d 486 (1989) (failure to procure permits self-created); *In re Fecteau,* 149 Vt. 319, 543 A.2d 693 (1988) (reliance on his surveyor's measurements held to be self-created).

## Conclusion

■ The variance at issue in the case *sub judice* is an "area" variance, not a "use" variance. *Gleason,* cited by the Court of Special Appeals, never applied to "area" variances, and, as we have indicated in the several cases we have cited, we made that distinction long ago. Moreover, there is a serious question of whether it is, or ever was, viable in any variance, as opposed to a "classification," situation.

As we failed to discern, or at least to discuss, in *Gleason,* zoning constitutes restrictions on land, not on title. Both the Maryland Declaration of Rights and the Fifth Amendment of the United States Constitution guarantee rights to property owners. Property owners start out with the unrestricted right to use their land as they see fit. Under the common-law, those rights are limited only by a restriction as to uses that create traditional nuisances. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Our cases, however, and the cases of the Supreme Court of the United States, *see Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), and its progeny, have held that reasonable regulation is constitutional.

That said, it must, nonetheless, be recognized that regulation of land, including zoning regulations, are limitations on the full exercise of a property owner's constitutional rights as well as his or her rights under the common-law.

In *Aspen Hill Venture v. Montgomery County Council,* 265 Md. 303, 313–14, 289 A.2d 303, 308 (1972), we quoted from our earlier case of *Landay v. Board of Zoning Appeals,* 173 Md. 460, 466, 196 A. 293, 296 (1938):

> "In such a situation we must not forget the underlying principle that, 'Such ordinances [zoning ordinances] are in derogation of the common law right to so use private property as to realize its highest utility, and while they should be liberally construed to accomplish their plain purpose and intent, they should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language.' " [Alteration in original.]

In that respect, reasonable zoning limitations are always directed to the property, itself, and its uses and structures, not to the completely separate matter of title to property, which is another whole field of law. In zoning, it is the property that is regulated, not the title.

█ In Maryland, when title is transferred, it takes with it all the encumbrances and burdens that attach to title; but it also takes with it all the benefits and rights inherent in ownership. If a predecessor in title was subject to a claim that he had created his own hardship, that burden, for variance purposes, passes with the title. But, at the same time, if the prior owner has not self-created a hardship, a self-created hardship is not immaculately conceived merely because the new owner obtains title.

█ To the extent that any vestige of *Gleason, supra,* has survived the cases in which we have distinguished it, it is, as to any application in cases of "area" variances, overruled. We do not resolve its application, if any, in "use" variance cases only because that issue is not squarely before us.[11]

---

11. It may not actually have been before us even in *Gleason.* As we have indicated, *Gleason* appears to have been a reclassification case.

We reverse the judgment of the Court of Special Appeals. Upon remand, the Anne Arundel County Board of Appeals will, in addition to complying with this opinion and the opinion of the Circuit Court for Anne Arundel County, apply the standards of *Belvoir Farms,* our *White,* and *Mastandrea.*

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE DECISION OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REMANDING THE CASE TO THE ANNE ARUNDEL COUNTY BOARD OF APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THE OPINION OF THE CIRCUIT COURT AND CONSISTENT WITH THE OPINION OF THIS COURT; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.